JUREK *v.* TEXAS

No. 75–5394.   Argued March 30, 1976—Decided July 2, 1976

*Anthony G. Amsterdam* argued the cause for petitioner. With him on the brief were *Jack Greenberg, James M. Nabrit III,* and *Peggy C. Davis.*

*John L. Hill,* Attorney General of Texas, argued the cause for respondent. With him on the brief were *Bert W. Pluymen,* Assistant Attorney General, and *Jim D. Vollers.*

*Solicitor General Bork* argued the cause for the United States as *amicus curiae.* With him on the brief was *Deputy Solicitor General Randolph. William E. James,* Assistant Attorney General, argued the cause for the State of California as *amicus curiae.* With him on the brief were *Evelle J. Younger,* Attorney General, and *Jack R. Winkler,* Chief Assistant Attorney General.*

Judgment of the Court, and opinion of MR. JUSTICE STEWART, MR. JUSTICE POWELL, and MR. JUSTICE STEVENS, announced by MR. JUSTICE STEVENS.

The issue in this case is whether the imposition of the sentence of death for the crime of murder under the law of Texas violates the Eighth and Fourteenth Amendments to the Constitution.

I

The petitioner in this case, Jerry Lane Jurek, was charged by indictment with the killing of Wendy Adams

---

*\*Arthur M. Michaelson* filed a brief for Amnesty International as *amicus curiae.*

"by choking and strangling her with his hands, and by drowning her in water by throwing her into a river . . . in the course of committing and attempting to commit kidnapping of and forcible rape upon the said Wendy Adams." [1]

---

[1] At the time of the charged offense, Texas law provided:

"Whoever shall ·voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." Tex. Penal Code, Art. 1256 (1973).

Under the new Texas Penal Code (effective Jan. 1, 1974), murder is now defined by § 19.02 (a):

"A person commits an offense if he:

"(1) intentionally or knowingly causes the death of an individual;

"(2) intends to cause serious bodily injury and commits àn act clearly dangerous to human life that causes the death of an individual; or

"(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate· flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual."

Texas law prescribed the punishment for murder as follows:

"(a) Except as provided in subsection (b) of this Article, the punishment for murder shall be confinement in the penitentiary for life or for any term of years not less than two.

"(b) The punishment for murder with malice aforethought shall be death or imprisonment for life if:

"(1) the person murdered a peace officer or fireman who was acting in the lawful discharge of an official duty and who the defendant knew was a peace officer or fireman;

"(2) the person intentionally committed the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, forcible rape, or arson;

"(3) the person committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration;

The evidence at his trial consisted of incriminating statements made by the petitioner,[2] the testimony of several people who saw the petitioner and the deceased during the day she was killed, and certain technical evidence. This evidence established that the petitioner, 22 years old at the time, had been drinking beer in the afternoon. He and two young friends later went driving together in his old pickup truck. The petitioner expressed a desire for sexual relations with some young girls they saw, but one of his companions said the girls were too young. The petitioner then dropped his two friends off at a pool hall. He was next seen talking to Wendy, who was 10 years old, at a public swimming pool where her grandmother had left her to swim. Other witnesses testified that they later observed a man resembling the petitioner driving an old pickup truck through town at a high rate of speed, with a young blond girl standing screaming in the bed of the truck. The last witness who saw them heard the girl crying "help me,

"(4) the person committed the murder while escaping or attempting to escape from a penal institution;

"(5) the person, while incarcerated in a penal institution, murdered another who was employed in the operation of the penal institution.

"(c) If the jury does not find beyond a reasonable doubt that the murder was committed under one of the circumstances or conditions enumerated in Subsection (b) of this Article, the defendant may be convicted of murder, with or without malice, under Subsection (a) of this Article or of any other lesser included offense." Tex. Penal Code, Art. 1257 (1973).

Article 1257 has been superseded by § 19.03 of the new Texas Penal Code, which is substantially similar to Art. 1257.

[2] The court held a separate hearing to determine whether these statements were given voluntarily, and concluded that they were. The question of the voluntariness of the confessions was also submitted to the jury. The Court of Criminal Appeals affirmed the admissibility of the statements. 522 S. W. 2d 934, 943 (1975).

help me." The witness tried to follow them, but lost them in traffic. According to the petitioner's statement, he took the girl to the river, choked her,[3] and threw her unconscious body in the river. Her drowned body was found downriver two days later.

At the conclusion of the trial the jury returned a verdict of guilty.

Texas law requires that if a defendant has been convicted of a capital offense, the trial court must conduct a separate sentencing proceeding before the same jury that tried the issue of guilt. Any relevant evidence may be introduced at this proceeding, and both prosecution and defense may present argument for or against the sentence of death. The jury is then presented with two (sometimes three) questions,[4] the answers to which determine whether a death sentence will be imposed.

During the punishment phase of the petitioner's trial, several witnesses for the State testified to the petitioner's bad reputation in the community. The petitioner's father countered with testimony that the petitioner had always been steadily employed since he had left school and that he contributed to his family's support.

The jury then considered the two statutory questions relevant to this case: (1) whether the evidence established beyond a reasonable doubt that the murder of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result, and (2) whether the evidence established beyond a reasonable doubt that there was

---

[3] The petitioner originally stated that he started choking Wendy when she angered him by criticizing him and his brother for their drinking. In a later statement he said that he choked her after she refused to have sexual relations with him and started screaming.

[4] See *infra*, at 269.

a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. The jury unanimously answered "yes" to both questions, and the judge, therefore, in accordance with the statute, sentenced the petitioner to death. The Court of Criminal Appeals of Texas affirmed the judgment. 522 S. W. 2d 934 (1975).

We granted certiorari, 423 U. S. 1082, to consider whether the imposition of the death penalty in this case violates the Eighth and Fourteenth Amendments of the United States Constitution.

## II

The petitioner argues that the imposition of the death penalty under any circumstances is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. We reject this argument for the reasons stated today in *Gregg* v. *Georgia, ante,* at 168–187.

## III

### A

After this Court held Texas' system for imposing capital punishment unconstitutional in *Branch* v. *Texas,* decided with *Furman* v. *Georgia,* 408 U. S. 238 (1972), the Texas Legislature narrowed the scope of its laws relating to capital punishment. The new Texas Penal Code limits capital homicides to intentional and knowing murders committed in five situations: murder of a peace officer or fireman; murder committed in the course of kidnaping, burglary, robbery, forcible rape, or arson; murder committed for remuneration; murder committed while escaping or attempting to escape from a penal institution; and murder committed by a prison inmate when the victim is a prison employee. See Tex. Penal Code § 19.03 (1974).

In addition, Texas adopted a new capital-sentencing procedure. See Tex. Code Crim. Proc., Art. 37.071 (Supp. 1975–1976). That procedure requires the jury to answer three questions in a proceeding that takes place subsequent to the return of a verdict finding a person guilty of one of the above categories of murder. The questions the jury must answer are these:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Art. 37.071 (b) (Supp. 1975–1976).

If the jury finds that the State has proved beyond a reasonable doubt that the answer to each of the three questions is yes, then the death sentence is imposed. If the jury finds that the answer to any question is no, then a sentence of life imprisonment results. Arts. 37.071 (c), (e) (Supp. 1975–1976).[5] The law also provides for an expedited review by the Texas Court of Criminal Appeals. See Art. 37.071 (f) (Supp. 1975–1976).

---

[5] The jury can answer "yes" only if all members agree; it can answer "no" if 10 of 12 members agree. Art. 37.071 (d) (Supp. 1975–1976). Texas law is unclear as to the procedure to be followed in the event that the jury is unable to answer the questions. See Vernon's Texas Codes Ann.—Penal § 19.03, Practice Commentary, p. 107 (1974).

The Texas Court of Criminal Appeals has thus far affirmed only two judgments imposing death sentences under its post-*Furman* law—in this case and in *Smith* v. *State,* No. 49,809 (Feb. 18, 1976) (rehearing pending; initially reported in advance sheet for 534 S. W. 2d but subsequently withdrawn from bound volume). In the present case the state appellate court noted that its law "limits the circumstances under which the State may seek the death penalty to a small group of narrowly defined and particularly brutal offenses. This insures that the death penalty will only be imposed for the most serious crimes [and] . . . that [it] will only be imposed for the same type of offenses which occur under the same types of circumstances." 522 S. W. 2d, at 939.

While Texas has not adopted a list of statutory aggravating circumstances the existence of which can justify the imposition of the death penalty as have Georgia and Florida, its action in narrowing the categories of murders for which a death sentence may ever be imposed serves much the same purpose. See *McGautha* v. *California,* 402 U. S. 183, 206 n. 16 (1971); Model Penal Code § 201.6, Comment 3, pp. 71–72 (Tent. Draft No. 9, 1959). In fact, each of the five classes of murders made capital by the Texas statute is encompassed in Georgia and Florida by one or more of their statutory aggravating circumstances. For example, the Texas statute requires the jury at the guilt-determining stage to consider whether the crime was committed in the course of a particular felony, whether it was committed for hire, or whether the defendant was an inmate of a penal institution at the time of its commission. Cf. *Gregg* v. *Georgia, ante,* at 165–166, n. 9; *Proffitt* v. *Florida, ante,* at 248–249, n. 6. Thus, in essence, the Texas statute requires that the jury find the existence of a statutory aggravating circumstance before the death penalty may be imposed.

So far as consideration of aggravating circumstances is concerned, therefore, the principal difference between Texas and the other two States is that the death penalty is an available sentencing option—even potentially—for a smaller class of murders in Texas. Otherwise the statutes are similar. Each requires the sentencing authority to focus on the particularized nature of the crime.

But a sentencing system that allowed the jury to consider only aggravating circumstances would almost certainly fall short of providing the individualized sentencing determination that we today have held in *Woodson* v. *North Carolina, post,* at 303–305, to be required by the Eighth and Fourteenth Amendments. For such a system would approach the mandatory laws that we today hold unconstitutional in *Woodson* and *Roberts* v. *Louisiana, post,* p. 325.[6] A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed.

Thus, in order to meet the requirement of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances. In *Gregg* v. *Georgia,* we today hold constitutionally valid a capital-sentencing system

---

[6] When the drafters of the Model Penal Code considered a proposal that would have simply listed aggravating factors as sufficient reasons for imposition of the death penalty, they found the proposal unsatisfactory:

"Such an approach has the disadvantage, however, of according disproportionate significance to the enumeration of aggravating circumstances when what is rationally necessary is . . . the balancing of any aggravations against any mitigations that appear. The object sought is better attained, in our view, by requiring a finding that an aggravating circumstance has been established *and* a finding that there are no substantial mitigating circumstances." Model Penal Code § 201.6, Comment 3, p. 72 (Tent. Draft No. 9, 1959) (emphasis in original).

that directs the jury to consider any mitigating factors, and in *Proffitt* v. *Florida* we likewise hold constitutional a system that directs the judge and advisory jury to consider certain enumerated mitigating circumstances. The Texas statute does not explicitly speak of mitigating circumstances; it directs only that the jury answer three questions. Thus, the constitutionality of the Texas procedures turns on whether the enumerated questions allow consideration of particularized mitigating factors.

The second Texas statutory question [7] asks the jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" if he were not sentenced to death. The Texas Court of Criminal Appeals has yet to define precisely the meanings of such terms as "criminal acts of violence" or "continuing threat to society." In the present case, however, it indicated that it will interpret this second question so as to allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show:

> "In determining the likelihood that the defendant would be a continuing threat to society, the jury

---

[7] The Texas Court of Criminal Appeals has not yet construed the first and third questions (which are set out in the text, *supra,* at 269); thus it is as yet undetermined whether or not the jury's consideration of those questions would properly include consideration of mitigating circumstances. In at least some situations the questions could, however, comprehend such an inquiry. For example, the third question asks whether the conduct of the defendant was unreasonable in response to any provocation by the deceased. This might be construed to allow the jury to consider circumstances which, though not sufficient as a defense to the crime itself, might nevertheless have enough mitigating force to avoid the death penalty—a claim, for example, that a woman who hired an assassin to kill her husband was driven to it by his continued cruelty to her. We cannot, however, construe the statute; that power is reserved to the Texas courts.

could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity, but more than the emotions of the average man, however inflamed, could withstand." 522 S. W. 2d, at 939–940.

In the only other case in which the Texas Court of Criminal Appeals has upheld a death sentence, it focused on the question of whether any mitigating factors were present in the case. See *Smith* v. *State,* No. 49,809 (Feb. 18, 1976). In that case the state appellate court examined the sufficiency of the evidence to see if a "yes" answer to question 2 should be sustained. In doing so it examined the defendant's prior conviction on narcotics charges, his subsequent failure to attempt to rehabilitate himself or obtain employment, the fact that he had not acted under duress or as a result of mental or emotional pressure, his apparent willingness to kill, his lack of remorse after the killing, and the conclusion of a psychiatrist that he had a sociopathic personality and that his patterns of conduct would be the same in the future as they had been in the past.

Thus, Texas law essentially requires that one of five aggravating circumstances be found before a defendant can be found guilty of capital murder, and that in considering whether to impose a death sentence the jury may be asked to consider whatever evidence of mitigating circumstances the defense can bring before it. It thus appears that, as in Georgia and Florida, the Texas

capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death.

## B

As in the Georgia and Florida cases, however, the petitioner contends that the substantial legislative changes that Texas made in response to this Court's *Furman* decision are no more than cosmetic in nature and have in fact not eliminated the arbitrariness and caprice of the system held in *Furman* to violate the Eighth and Fourteenth Amendments.[8]

### (1)

The petitioner first asserts that arbitrariness still pervades the entire criminal justice system of Texas—from the prosecutor's decision whether to charge a capital offense in the first place and then whether to engage in plea bargaining, through the jury's consideration of lesser included offenses, to the Governor's ultimate power to commute death sentences. This contention fundamentally misinterprets the *Furman* decision, and we reject it for the reasons set out in our opinion today in *Gregg* v. *Georgia, ante,* at 199.

### (2)

Focusing on the second statutory question that Texas requires a jury to answer in considering whether to impose a death sentence, the petitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless. It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not

---

[8] See *Branch* v. *Texas,* decided with *Furman* v. *Georgia,* 408 U. S. 238 (1972).

mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct.[9] And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.[10] For those sentenced to prison, these same predictions must be made by parole authorities.[11] The task that a Texas jury

---

[9] See, *e. g.*, American Bar Association Project on Standards for Criminal Justice, Pretrial Release § 5.1 (a) (Approved Draft 1968): "It should be presumed that the defendant is entitled to be released on order to appear or on his own recognizance. The presumption may be overcome by a finding that there is substantial risk of nonappearance . . . . In capital cases, the defendant may be detained pending trial if the facts support a finding that the defendant is likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice or will flee if released."

[10] See, *e. g., id.*, Sentencing Alternatives and Procedures § 2.5 (c): "A sentence not involving total confinement is to be preferred in the absence of affirmative reasons to the contrary. Examples of legitimate reasons for the selection of total confinement in a given case are:

"(i) Confinement is necessary in order to protect the public from further criminal activity by the defendant . . . ."

A similar conclusion was reached by the drafters of the Model Penal Code:

"The Court shall deal with a person who has been convicted of a crime without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for protection of the public because:

"(a) there is undue risk that during the period of a suspended sentence or probation the defendant will commit another crime." Model Penal Code § 7.01 (1) (Proposed Official Draft 1962).

[11] See, *e. g., id.*, § 305.9 (1):

"Whenever the Board of Parole considers the first release of a

must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.

## IV

We conclude that Texas' capital-sentencing procedures, like those of Georgia and Florida, do not violate the Eighth and Fourteenth Amendments. By narrowing its definition of capital murder, Texas has essentially said that there must be at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered. By authorizing the defense to bring before the jury at the separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function. By providing prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution. *Furman* v. *Georgia,* 408 U. S., at 310 (STEWART, J., concurring).

---

prisoner who is eligible for release on parole, it shall be the policy of the Board to order his release, unless the Board is of the opinion that his release should be deferred because:

"(a) there is substantial risk that he will not conform to the conditions of parole . . . ."

Accordingly, the judgment of the Texas Court of Criminal Appeals is affirmed.

*It is so ordered.*

[For dissenting opinion of MR. JUSTICE BRENNAN, see *ante*, p. 227.]

[For dissenting opinion of MR. JUSTICE MARSHALL, see *ante*, p. 231.]

MR. CHIEF JUSTICE BURGER, concurring in judgment.

I concur in the judgment. See *Furman* v. *Georgia*, 408 U. S. 238, 375 (1972) (BURGER, C. J., dissenting).

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST join, concurring in the judgment.

Following the invalidation of the Texas capital punishment statute in *Branch* v. *Texas,* decided with *Furman* v. *Georgia,* 408 U. S. 238 (1972), the Texas Legislature re-enacted the death penalty for five types of murder, including murders committed in the course of certain felonies and required that it be imposed providing that, after returning a guilty verdict in such murder cases and after a sentencing proceeding at which all relevant evidence is admissible, the jury answers two questions in the affirmative—and a third if raised by the evidence:

> "(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> "(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unrea-

sonable in response to the provocation, if any, by the deceased." Tex. Code Crim. Proc., Art. 37.071 (b) (Supp. 1975–1976).

The question in this case is whether the death penalty imposed on Jerry Lane Jurek for the crime of felony murder may be carried out consistently with the Eighth and Fourteenth Amendments.

The opinion of MR. JUSTICE STEWART, MR. JUSTICE POWELL, and MR. JUSTICE STEVENS describes, and I shall not repeat, the facts of the crime and proceedings leading to the imposition of the death penalty when the jury unanimously gave its affirmative answers to the relevant questions posed in the judge's post-verdict instructions. I also agree with that opinion that the judgment of the Texas Court of Criminal Appeals, which affirmed the conviction and judgment, must be affirmed here. 522 S. W. 2d 934 (1975).

For the reasons stated in my dissent in *Roberts* v. *Louisiana, post,* at 350–356, I cannot conclude that the Eighth Amendment forbids the death penalty under any and all circumstances. I also cannot agree with petitioner's other major contention that under the new Texas statute and the State's criminal justice system in general, the criminal jury and other law enforcement officers exercise such a range of discretion that the death penalty will be imposed so seldom, so arbitrarily, and so freakishly that the new statute suffers from the infirmities which *Branch* v. *Texas* found in its predecessor. Under the revised law, the substantive crime of murder is defined; and when a murder occurs in one of the five circumstances set out in the statute, the death penalty *must* be imposed if the jury also makes the certain additional findings against the defendant. Petitioner claims that the additional questions upon which the death sentence depends are so vague that in essence the

jury possesses standardless sentencing power; but I agree with JUSTICES STEWART, POWELL, and STEVENS that the issues posed in the sentencing proceeding have a common-sense core of meaning and that criminal juries should be capable of understanding them. The statute does not extend to juries discretionary power to dispense mercy, and it should not be assumed that juries will disobey or nullify their instructions. As of February of this year, 33 persons, including petitioner, had been sentenced to death under the Texas murder statute. I cannot conclude at this juncture that the death penalty under this system will be imposed so seldom and arbitrarily as to serve no useful penological function and hence fall within reach of the decision announced by five Members of the Court in *Furman* v. *Georgia.*

Nor, for the reasons I have set out in *Roberts, post,* at 348–350, and *Gregg, ante,* at 224–225, am I convinced that this conclusion should be modified because of the alleged discretion which is exercisable by other major functionaries in the State's criminal justice system. Furthermore, as JUSTICES STEWART, POWELL, and STEVENS state and as the Texas Court of Criminal Appeals has noted, the Texas capital punishment statute limits the imposition of the death penalty to a narrowly defined group of the most brutal crimes and aims at limiting its imposition to similar offenses occurring under similar circumstances. 522 S. W. 2d, at 939.

I concur in the judgment of affirmance.

MR. JUSTICE BLACKMUN, concurring in the judgment.

I concur in the judgment. See *Furman* v. *Georgia,* 408 U. S. 238, 405–414 (1972) (BLACKMUN, J., dissenting), and *id.,* at 375, 414, and 465.