James David AUTRY,
Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 83–2597.

United States Court of Appeals,
Fifth Circuit.

Oct. 4, 1983.

See also 706 F.2d 1394.

Stefan Presser, Greater Houston American Civil Liberties Union, E. Larry Cantu, Houston, Tex., for petitioner-appellant.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

In June, 1983 we affirmed the district court's denial of James David Autry's Petition for Writ of Habeas Corpus. *Autry v. Estelle,* 706 F.2d 1394 (5th Cir.1983).

On October 3, 1983, the United States Supreme Court denied Autry's request for stay of execution pending review of his first petition. Autry has since filed a successive petition for writ of habeas corpus in the state courts of Texas and the United States District Court. In this successive petition Autry raises three new grounds:

1. Petitioner's Sixth Amendment right to effective assistance of counsel was violated by the failure of Petitioner's . attorney to present any evidence in mitigation of punishment at the punishment proceeding;

2. The Texas death penalty procedures violate the Eighth Amendment in that they preclude the jury's consideration of issues and evidence pertinent to the mitigation of Petitioner's punishment;

3. The Texas Court of Criminal Appeals failed to conduct a proportionality review of Petitioner's sentence to insure that the sentence is not disproportionate [sic] to sentences imposed in similar cases thereby violating Petitioner's Eighth Amendment rights.

This morning, October 4, 1983, the district court conducted an evidentiary hearing. It then denied the petition, filing a four page written Order. The district court specifically rejected the claim that Charles Carver was ineffective in his representation at the punishment phase of the proceedings. Autry had contended that his counsel failed to interview witnesses and to properly prepare them for the sentencing hearing. The district court took evidence and specifically rejected these assertions finding that Autry's mother was present but that Autry had refused to permit his mother to testify. He also found that Autry had told his counsel that he would ask the jury for the death

penalty if he testified. The district court recited his familiarity with defense counsel whom he described as "well known to this court as an able and competent criminal defense lawyer." He noted that he had reviewed the transcript in its entirety and had observed Carver's skill and believed that he was "as effective as the facts would permit."

The district court rejected Autry's claim that the Texas death penalty scheme fails constitutional muster for the lack of a proportionality review. The district court noted that in *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929, 941 (1976), the Supreme Court found the Texas death penalty system to provide "even handed, rational and consistent imposition of death sentences." The district court then rejected the contention that the Texas death penalty procedures precluded jury consideration of factors relevant to mitigation of punishment.

Only hours before the scheduled execution Petitioner comes to this court with an oral motion for a certificate of probable cause and stay pending appeal. We note at the outset that the district court not only denied the habeas petition but also denied a stay of execution and refused to grant a certificate of probable cause. We face then at the outset the question of Autry's present entitlement to that certificate. "[A] certificate of probable cause requires petitioner to make a 'substantial showing of a denial of [a] federal right.'" *Barefoot v. Estelle,* ── U.S. ──, ──, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090, 1104 (1983). The *Barefoot* Court explained "he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" The Court also noted that second and successive petitions "present a different issue" and that "the granting of a stay should reflect the presence of substantial grounds upon which relief might be granted." We turn now to the three asserted constitutional deprivations.

The claim of ineffective assistance of counsel is rooted in questions of fact. An evidentiary hearing has been held and facts have been found against Autry. Autry's claim of ineffective assistance of counsel was relatively specific. It asserted "petitioner was deprived of the effective assistance of counsel at the sentencing phase of his capital trial." The essence of Autry's present attack is not upon a perceived lack of evidence to support the findings, but instead is that the hearing which he requested by a "Petition for Stay of Execution and Writ of Habeas Corpus" was inadequate for failure to give sufficient opportunity to secure witnesses. The record is plain, however, that Petitioner's new counsel was obtaining affidavits aimed at the assertion of ineffective assistance of counsel as early as September 19, 1983 even while the case was before the Supreme Court on a request for stay pending certiorari. That is, while a stay was being sought from the Supreme Court, counsel, without informing that court of their "recent discovery," was preparing for the successive writ. Indeed new counsel discussed with old counsel the prospects of his *testimony* and whether he would "avoid" a state subpoena but never requested the presence of Autry. The state had its witnesses present but Autry's counsel did not.

*Barefoot* counselled:

Even where it cannot be concluded that a petition should be dismissed under Rule 9(b), it would be proper for the district court to expedite consideration of the petition.

── U.S. at ──, 103 S.Ct. at 3395, 77 L.Ed.2d at 1105.

New counsel for Autry was as fully familiar with this propriety as he was with the fact that the state intended to attend the expedited hearing and put on oral proof from old counsel. No suggestion was made that the witnesses Autry says he would have called were not available within the time frame between the taking of their affidavits and this hearing date. On this record, counsel's failure to present oral testimony at the evidentiary hearing can only be

viewed as a tactical decision. This expedited hearing was proper under *Barefoot* given these facts. The trial court's findings based on that hearing are not clearly erroneous. The trial court did not err in denying the claim of ineffective assistance of counsel on its merits.

■ This timing of presentation is also an abuse of the Great Writ. *See* Rule 9(b) 28 U.S.C. § 2254.[1] Even if we credit Autry's affidavit we are persuaded that the failure to earlier assert the claim of ineffective assistance of counsel was an abuse of the writ. Autry needed no legal education to be aware that he was not adequately represented at the sentencing hearing. His claim that his lawyer did nothing was hardly lost on him. The suggestion that he would not charge his then counsel with inadequacy is belied by this very petition. In sum, Autry was aware of this claim but did not raise it until the last minute. Even then his new counsel held this claim in his pocket until he was sure that the stay being sought from the Supreme Court on other grounds was denied.

■ We reject Autry's claim that the Texas death penalty statute is unconstitutional in that it precludes a jury consideration of issues pertinent to punishment. This claim was available to Autry throughout the time from his conviction until now but he failed to assert it at the state trial court on direct appeal or through the entire first habeas trip. He makes no claim that his counsel was inadequate in this regard. He offers no other explanation for failure to raise it. Regardless the Supreme Court upheld the present Texas scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) and we apply here that holding. We are aware of *Hovila v. State*, 562 S.W.2d 243 (Tex.Cr.App.1978) *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979) in which the Texas court arguably circumscribed the permissible evidence in death penalty cases and that some commentators raise similar questions. But

if counsel's construction be accepted that five year old decision makes all the more inexplicable the failure to earlier raise the question. We do not suggest agreement with this claim and need not decide the question. The system in no way, by Autry's own claim, prevented his presentation of mitigating evidence. Autry's claim is that his lawyer failed to offer the evidence. His lawyer testified that Autry would not allow it. That factual dispute has been resolved against him.

■ Autry urges that we should stay his execution pending the decision of the Supreme Court in *Pulley v. Harris*. He asserts that the court granted certiorari to determine whether proportionality review is constitutionally required and if so "what is the constitutionally required focus, scope and procedural structure of such review." *See Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982), *cert. granted*, —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983). We note that a similar claim was raised in opposition to dissolve a stay in *Alabama v. Evans*, —— U.S. ——, 103 S.Ct. 1736, 75 L.Ed.2d 806 (1983), but the court declined to halt the execution.

We are persuaded that the Texas system is not so deficient. Its narrowing selection of capital offenses, coupled with the required jury finding in the sentencing phase of future dangerousness, effectively creates a proportionality screen. Given the Supreme Court endorsement in *Jurek*, its refusal to halt execution in *Evans* and the structure of Texas procedure we cannot find that this issue meets the test for a certificate of probable cause.

Nor are we persuaded that the state's claim of writ abuse is without merit here. We do not choose to rest on this ground but note that *Harris v. Pulley* was decided by the Ninth Circuit prior to Autry's first habeas trip. Moreover, review was granted by the Supreme Court before that habeas petition was argued before this panel earlier this year. It was never mentioned.

1. Counsel was aware below that writ abuse was charged and has made no suggestion to the contrary. Our conclusions flow from undisputed facts after counsel had full opportunity to argue their position below and here.

We would not deny the requested certificate and stay on grounds of a technical ring. Abuse of the Great Writ is not of that genre. Even so this doctrine has a final escape valve. We could reach through to prevent injustice—if we found it. But we do not. We are painfully aware of the little time we have—but point out that this time pressure is a creature of Autry's delay. We remind that we will set aside the solemn judgment of a state criminal conviction only when errors of constitutional magnitude are present for our review. We have found none here. Our function is limited. We are not the primary source of review and we can not allow our processes to be manipulated to make us so.

Petitioner's oral motions for a certificate of probable cause and a stay of execution are denied.