OPINION OF THE COURT
Joseph E. Fahey, J.
On February 26, 1998, this court determined that section 125.27 (1) (a) (vii) of the Penal Law defining murder in the first degree was unconstitutional because it violated the due pro *102 cess guarantees of the Constitution of the United States and article I, § 6 of the Constitution of New York (176 Misc 2d 86). On March 2, 1998, at the People’s request, the court granted reargument so that the Attorney-General could appear pursuant to section 71 of the Executive Law. On April 3, 1998 the Attorney-General filed a memorandum of law in support of his position that this section is not unconstitutional. Oral argument was held in this court on May 1, 1998.
The Attorney-General contends that because: “Section 125.27(1)(a)(vii) limits the application of the accessorial liability provisions of Section 20.00 to instances where the defendant commanded another person to cause the death of another person, and thus, the evidence that the defendant simply requested, solicited or importuned the conduct constituting this crime is [insufficient], even though by operation of Section 20.00 it might be sufficient with regard to most other crimes. In narrowing the application of a statute which is punishable by the death penalty, the statute serves the constitutionally mandated purpose ‘of limiting the class of death eligible defendants.’ ” (Citations omitted.)
The Attorney-General, citing Tuilaepa v California (512 US 967, 973-974 [1994]), argues that there is a certain elasticity to the vagueness analysis, greater than that engaged in by the court in its original decision, quoting Justice Kennedy: “Because ‘the proper degree definition’ of eligibility and selection factors often ‘is not susceptible of mathematical precision,’ our vagueness review is quite deferential. Walton, supra, 497 U.S. at 655, 110, S.Ct.. at 3058; see Gregg, supra, 428 US at 193-4, 96 S.Ct. at 2935 (factors ‘are by necessity somewhat general’), relying on the basic principle that a factor is not unconstitutional if it has some ‘common-sense core of meaning * * * that criminal juries should be capable of understanding’ Jurek v. Texas, 8 US 262, 279, 96 S.Ct. 2950, 2959, 49 L.Ed.2d 929 (1976) (White J. concurring in judgment), we have found only a few factors vague, and those in fact are quite similar to one another. See Maynard, supra, 486 US at 363-364,108 S.Ct. at 1859 (question whether murder was ‘especially heinous, atrocious, or cruel’); Godfrey, supra, 446 U.S. at 427-429, 100 S.Ct. at 1764-1765 (question whether murder was outrageously vile, horrible or inhuman); cf. Arave, 507 US at 472, 113 S.Ct. at 1541 CWe are not faced with pejorative adjectives * * * that describe a crime as a whole.’ ”). (Attorney-General’s mem of law, at 5.)
The Attorney-General, however, appears to have overlooked additional language in the opinion, in particular: “The ag *103 gravating circumstance may be contained, in the definition of the crime or in a separate sentencing factor (or in both). Lowenfield, supra, at 244-246. As we have explained, the aggravating circumstance must meet two requirements. First, [it] may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. See Arave v. Creech, 507 U. S. 463, 474 (1993) ('If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm’). Second, the aggravating circumstance must not be unconstitutionally vague. Godfrey v. Georgia, 446 U. S. 420, 428 (1980); see Arave, supra, at 471 (court ‘“must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer” ’) (quoting Walton v. Arizona, 497 U. S. 639, 654 (1980)).” (512 US 967, 973, supra.)
At first blush, the term “command” appears to satisfy the first requirement of the Supreme Court’s test in Tuilaepa (supra), as it would appear to narrow the subclass of defendants convicted as accessories to only those determined to have “commanded” the killing pursuant to section 20.00 of the Penal Law. (Penal Law § 125.27 [1] [a] [vii].) However, as this court observed in its opinion of February 26, 1998, if the Black’s Law Dictionary definition were applied, all other terms contained in section 20.00, which are synonymous with it, would also apply, thereby expanding the class to anyone charged as an accessory. (176 Misc 2d, supra, at 90.) This, of course, runs afoul of the test set forth above in Tuilaepa (supra).
The term similarly does not meet the second requirement laid down in Justice Kennedy’s opinion in that it is impermissibly vague because it does not have a definition as discussed in the court’s previous decision and order.
The Attorney-General additionally cites the Supreme Court holding in Jurek v Texas (428 US 262 [1976]) as authority for the proposition that the term “command” is not unconstitutionally vague. (Attorney-General’s mem of law, at 5-6.) In Jurek (supra, at 268), the Supreme Court determined that an aggravating circumstance which involved a jury determination concerning whether a defendant “would commit criminal acts of violence that would constitute a continuing threat to society” was not unconstitutionally vague. In Jurek (supra, at 275-276), Justice Stewart observed: “It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, pre *104 diction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge’s prediction of the defendant’s future conduct. And any sentencing authority must predict a convicted person’s probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.” (Emphasis added.)
Moreover, Justice Stewart pointed out that Texas law contained clear and explicit criteria for the jury to make this determination noting: “ Tn determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity, but more than the emotions of the average man, however inflamed, could withstand.’ 522 S. W. 2d, at 939-940.” (428 US 262, 272-273, supra.)
As has been previously discussed, the statute under consideration in the instant case contains no definition and the Attorney-General has not proposed or supplied one here.
The Attorney-General further asserts that the language from United States v Charnay (537 F2d 341, 356-357 [9th Cir 1976]) is an appropriate standard for determining that the undefined term “command” is not necessarily void for.vagueness. There the Ninth Circuit held: “In this case, we are untroubled by the fact that never before has the section and rule been applied to a similar situation. Furthermore, in fixing criminal liability under section 10(b) and Rule 10b-5, we attach reduced importance to assertions of vagueness. The fact that men of common intelligence — or lawyers and judges for that matter— ‘must necessarily guess at its meaning and differ as to its ap *105 plication,’ does not require that we declare this section 10(b) void for vagueness.” (Citations omitted.)[1]
While the Ninth Circuit, misconstruing the Supreme Court’s standard for vagueness, apparently was troubled by the lack of any precedent for application of a rule in a securities case, it is well settled that more is required in applying a capital statute. In Godfrey v Georgia (446 US 420, 428, supra), Justice Stewart wrote: “if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State’s responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates ‘standard-less [sentencing] discretion.’ Gregg v. Georgia, supra, at 196, n. 47. See also Proffitt v. Florida, 28 U. S. 242, Jurek v. Texas, 428 U. S. 262.” (Emphasis added.)
At oral argument of the motion to reconsider the court’s previous determination, the Attorney-General contended that the court, in conducting this analysis, was applying a standard of “heightened Due Process”, which all other courts in this State have rejected. At the outset, the court would note that the accused has neither sought nor has the court agreed to apply a “heightened Due Process” standard to its review of the various applications made in this case. As was noted in the court’s prior opinion, New York has no body of case law construing death eligible statutes for at least two decades. That being the case, the court has little choice but to apply the principles enunciated by the Supreme Court of the United States in Gregg (428 US 153, supra), and its progeny in such an analysis.
Both the Attorney-General and the People, at oral argument, maintained because the court in its previous decision found the relationship between Couser and Stanback to be “murky at best” (176 Misc 2d, supra, at 90), the decision concerning the sufficiency of the Grand Jury presentment was a factual determination which did not require the court to reach the issue of the constitutionality of the statute. While the testimony concerning the relationship between Couser and Stanback is indeed murky, it is the additional fact that the term “command” lacks any definition that precludes a finding that there *106 was ample proof to impose liability under this particular section of the statute.
Finally, it is readily apparent that the Attorney-General misconceives this court’s determination when he contends that: “while the Court suggests the term ‘command’ is undefinable, it apparently has no problem understanding its meaning or distinguishing it from other forms of conduct covered by section 20.00.” (Attorney-General’s mem of law, at 6.)
This court has not said that the term “command” is “undefinable”, only that it is undefined. The People at oral argument suggest that it is appropriate for the courts to “interpret” this term and join in the Attorney-General’s argument that no greater definition need be provided in the statute.[2] This court, however, believes that it is one thing to “interpret” and another to “define”. In this regard it is not for this court or any court to give it a definition, it is the Legislature’s function to provide that meaning.
For all of the foregoing reasons, the court adheres to its prior determination.

. This language is taken from Connally v General Constr. Co. (269 US 385, 391 [1926]), which actually held that “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. International Harvester Co. v. Kentucky, 234 U. S. 216, 221; Collins v. Kentucky, 234 U. S. 634, 638.”

. The Attorney-General suggested at oral argument that if the term “command” in section 125.27 (1) (a) (vii) of the Penal Law required greater definition than that which is concededly not provided in section 20.00 of the Penal Law, then each and every term in that statute would require definition also. While such a precise statute might be desirable, particularly where those subject to it are death eligible, the Attorney-General has vastly overstated the problem. All agree that the term “command” is an aggravating factor, the existence which if proven could subject the accused to the death penalty. It thus becomes a critical element of the statute in a jury’s determination in both the guilt and penalty phases. Since the ultimate penalty could be exacted depending upon the existence or nonexistence of this circumstance, the court believes that a precise definition is required.