DENNIS, Circuit Judge,
dissenting:
Because I disagree with the majority’s application of Miller-El to the standard of review in this case, and because I disagree with the district court’s conclusion that the state court did not violate clearly established federal law in excluding execution impact evidence and believe the issues presented are adequate to deserve encouragement to proceed further, I respectfully dissent.
Initially, I note that the majority, while correctly stating the standard of review from Miller-El v. Cockrell, has partially ignored the mandate of the Supreme Court in applying this standard. 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The majority correctly notes that under Miller-El, we must ask whether “jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.” Id. at 327, 123 S.Ct. 1029. The majority opinion concludes that *619 the issues do not deserve encouragement to proceed further because there is no indication that a full inquiry would result in the petitioner succeeding on his claims. However, to short-circuit the inquiry in this way is precisely what Miller-El forbids. It is not required of the defendant to prove that “some jurists would grant the petition for habeas corpus.” Id. at 338, 123 S.Ct. 1029. “Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.” Id. The majority interprets Miller-El as a fairly restrictive standard of review when it was intended to be applied as an unrestrictive one. In fact, the language of Miller-El suggests this lack of restriction by stating that the habeas petitioner faces only a “threshold” inquiry and “need only” demonstrate a substantial showing of the denial of a constitutional right. Id. at 327, 123 S.Ct. 1029. This is especially important in death penalty cases, which have a uniquely severe penalty. Pippin v. Dretke, 434 F.3d 782, 786-87 (5th Cir.2005)(recognizing the limited restrictions of Miller-El and holding that in the Fifth Circuit “any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner”); Clark v. Collins, 956 F.2d 68, 71 (5th Cir.1992) (noting that the severity of a death penalty sentence is a proper consideration in weighing whether to grant a COA).
As to the substance of this request for a COA, I believe that the issues presented are adequate to deserve encouragement to proceed further. At the time of the Texas Court of Criminal Appeals decision in this case, Jackson v. State, 33 S.W.3d 828 (Tex.Crim.App.2000), the applicable clearly established Federal law determined by the Supreme Court’s decisions were the general principles of relevance underlying F.R.E. 401-403. See McKoy v. North Carolina, 494 U.S. 433, 440-441, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (citing and quoting New Jersey v. T.L.O., 469 U.S. 325, 345, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). These principles mandated that the execution impact evidence offered by the defendant be admitted.
The most important Supreme Court decision to this case is Payne v. Tennessee, a case that dealt with the admissibility of victim impact evidence, or evidence of the effect of the crime on the victim. 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In Payne, the Court overruled Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). In those cases the Court had held that the Eighth and Fourteenth Amendments disallowed the State’s introduction of victim impact testimony because: (1) in capital sentencing, which must focus on the defendant as a uniquely individual human being, victim-impact evidence is wholly unrelated to the defendant’s moral blameworthiness and would impermissibly divert the jury’s attention away from its constitutionally mandated inquiry into the defendant’s background and record; and (2) the introduction of victim-impact evidence would lead to a disproportionate number of death sentences in cases in which victims’ family members are willing and able to express their grief, which the Court characterized as an arbitrary basis for the imposition of the death penalty.
The reason the Texas CCA gave for affirming the exclusion of execution-impact evidence in this case was very similar to the first reason the Supreme Court held in Booth that the Eighth Amendment excluded victim-impact evidence. See Jackson v. State, 33 S.W.3d 828 (Tex.Crim.App.2000). The Texas CCA rejected the admissibility of execution impact evidence for the rea *620 sons stated in Fuller v. State, which held that:
“The contention here focuses on whether a witness felt that appellant should live or die. Since that specific desire does not pertain to appellant’s background, character, or record, or the circumstances of the offense, the trial court did not err in prohibiting it.” 827 S.W.2d 919, 935-36 (Tex.Crim.App.1992).
Like Booth, both the Texas CCA and the majority here rely upon the idea that there are only a limited set of aggravating or mitigating factors to which evidence in capital sentencing proceedings may be relevant. Payne expanded the scope of these factors to include the amount of harm caused by the crime, an element that the Court impliedly conceded has no relevance to those traditional factors. The Supreme Court has required the liberal admission of mitigating evidence in death cases that may be relevant to the deathworthiness or “culpability” of defendants, and these holdings conflict with the idea that there are limited categories of admissible evidence in death cases to which evidence can be neatly fitted. Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).
The idea that evidence relevant to individualized capital sentencing must be constrained to these limited categories is belied by past Supreme Court jurisprudence. For example, in one of the cases we have frequently struggled with, Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Court approved an examination into whether the defendant would be a danger in the future as a basis for declining to impose the death penalty — an inquiry that does not necessarily focus on evidence fitting into any of those categories. The Court defined the sentencer’s inquiry to be much broader there, holding that “[a] jury must be allowed to consider on the basis of all relevant evidence not only why the death penalty should be imposed, but also why it should not be imposed.” Id. at 271, 96 S.Ct. 2950. In Skipper v. South Carolina, the Court held that it was appropriate to inquire into the behavior of a defendant during prison because a jury could be convinced that he should be spared the death penalty because he “could lead a useful life behind bars if sentenced to life imprisonment.” 476 U.S. 1, 7, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Testimony that a defendant is beloved and valued by family and friends outside of prison is directly relevant to the question of whether he can lead a “useful life” if sentenced to life imprisonment because it tends to show that other people consider the defendant valuable as a human being and would benefit from the defendant’s survival.
The Payne Court has noted that “States cannot limit the sentencer’s consideration of any relevant circumstance that could cause it to decline to impose the [death] penalty.” Payne, 501 U.S. at 824, 111 S.Ct. 2597, quoting McCleskey v. Kemp, 481 U.S. 279, 305-06, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). It has long been established by Supreme Court jurisprudence that an individualized determination of deathworthiness requires that the jury be allowed to consider any evidence if “the sentencer could reasonably find that it warrants a sentence less than death.” McKoy v. North Carolina, 494 U.S. 433, 441, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). Execution impact testimony easily satisfies this sentencing relevance test — it is testimony as to the value of the defendant’s life and cost of his death to family and friends, and this value or cost could serve as a basis for the sentencer to determine that the death penalty should not be imposed.
There is also a further difficulty in this particular case in that victim impact testimony was introduced. In Jackson’s case, *621 the State introduced potent evidence of the effects of the murders on the victims’ relatives, including evidence that the father of the victims was driven to extreme psychological problems by the murders, moaning throughout the night, rolling around on the ground, and standing around in a dining room all night turning in circles. Jackson, 33 S.W.3d at 840. In fact, the original rationale in Payne for allowing this sort of dramatic testimony was that “virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances .... ” Payne, 501 U.S. at 822, 111 S.Ct. 2597. The point of allowing victim impact evidence was to avoid “unfairly weighting the scales in a capital trial” by allowing the defendant unlimited discretion to introduce evidence of his own mitigated culpability and blameworthiness without allowing the prosecution a chance to respond. Id. at 822-23, 111 S.Ct. 2597. The decision of the state court to bar the defendant from introducing similar evidence thus undercuts the constitutional rationale for allowing the introduction of victim impact evidence.
In a case in which the prosecution introduces no victim impact evidence it might be reasonable and fair for the trial court to exclude execution-impact evidence because of Federal Rule of Evidence 403 concerns. If the value of the victim’s life is permitted to be brought before the jury, however, then I see no option under Supreme Court jurisprudence but to permit the defendant to counter this evidence with evidence of the value of his own life. The principles of relevance underlying F.R.E. 403 as well as the fundamental guarantees of due process and fairness require the admission of the defendant’s countervailing evidence of a similar nature in order to prevent unfair prejudice to the defendant’s case. The discussion in Payne demonstrates that this due process analysis is fundamental to the admissibility of execution impact evidence. Justice O’Connor stated in her concurring opinion that:
We do not hold today that victim impact evidence must be admitted, or even that it should be admitted. We hold merely that if a State decides to permit consideration of this evidence, “the Eighth Amendment erects no per se bar.” Ante, at 2609. If, in a particular case, a witness’ testimony or a prosecutor’s remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment.
Payne, 501 U.S. at 831, 111 S.Ct. 2597. Justice Souter emphasized “the trial judge’s authority and responsibility to control the proceedings consistently with due process, on which ground defendants may object and, if necessary, appeal.” Id. at 836, 111 S.Ct. 2597 (Souter, J., concurring).
Furthermore, Justice O’Connor’s concurrence demonstrated the due process analysis by which she, Justice White and Justice Kennedy, determined that there was no due process violation in that particular case. Under their rationale two factors served to alleviate the effect of the victim impact evidence in Payne and to prevent if from being unfairly prejudicial: its brevity, in that the grandmother of the three year old son of one victim testified that he cried for his mother and baby sister and could not understand why they did not come home; and its redundance, because the jury was fully informed in the guilt phase that the three year old was also stabbed but survived in the same criminal transaction that took the lives of his mother and sister. The fact that the victim impact testimony was redundant and cumulative decreased its prejudicial effect in the sentencing hearing. Payne, 501 U.S. at 833, 111 S.Ct. 2597. Here, as discussed above, the victim impact testimo *622 ny was dramatic and was not redundant, requiring the ability of the defense to respond in kind with evidence of its own on the impact of the execution on the defendant’s family.
Because the petitioner has made a substantial showing of the denial of his constitutional rights by the state court’s exclusion of his execution impact evidence, and because the majority short-circuited its inquiry into whether the issues are adequate to deserve encouragement to proceed further in direct conflict with the Supreme Court’s admonitions in Miller-El, I respectfully dissent.