IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-25,897-03






Ex parte JOSE ANGEL MORENO, Applicant






ON APPLICATION FOR WRIT OF HABEAS CORPUS FROM 


BEXAR COUNTY





 Cochran, J., filed a statement concurring in the denial of the motion for stay of
execution and the dismissal of the petition for writ of habeas corpus.


STATEMENT 



 I agree with Judge Womack that many members of the bench and bar, including four
members of the United States Supreme Court, (1) believed that Tennard v. Dretke, 542 U.S. 274
(2004) and Smith v. Texas, 543 U.S. 37 (2004), announced "new law" that could be invoked
under Article 11.071, § 5, as an exception to the general statutory bar against subsequent writ
applications. With great reluctance, I disagree with Judge Womack that we can simply
declare that Tennard and Smith established new law "as a matter of state law." I cannot agree
for two reasons. 

 First, five members of the United States Supreme Court very recently held that the
Texas special issues were always constitutionally deficient for failing to provide a special
vehicle for mitigation evidence until the Texas Legislature statutorily enacted a special
mitigation issue in 1991. (2) Apparently, this holding was silently lurking in the penumbras of
Jurek v. Texas (3) all along, but this Court, as well as the Fifth Circuit, simply never realized
it. Nonetheless, it was clearly established federal constitutional law. (4) We are not at liberty
to disagree.

 Second, five members of this Court accurately anticipated the Supreme Court's recent
decisions and held that Tennard and Smith did not establish new law concerning mitigation
evidence and the former "nullification" instruction. (5) In Ex parte Hood, a majority of this
Court concluded that a reasonable person could have and should have been able to formulate
a habeas claim concerning mitigation evidence and the nullification instruction based upon
Penry v. Lynaugh, 492 U.S. 302 (1989). (6) I dissented from that decision and concluded that
no Texas or federal court had recognized the legal basis for a claim that the Texas special
issues were systemically inadequate to address mitigation evidence beyond the Penry
scenario until Tennard and Smith were decided in 2004. (7) Although it may be true that no
Texas or federal court had held that the pre-1991 Texas special issues were systemically
flawed, Brewer and Abdul-Kabir proved me wrong in my conclusion that Tennard and Smith
established "newly available" law for purposes of allowing consideration of a subsequent
writ under article 11.071, § 5. In Hood, I expressed my concern with the dilemma of what
Chief Justice Roberts calls the "dog's breakfast of divided, conflicting, and ever-changing
analyses" (8) of the Supreme Court's capital murder mitigation law. (9) A clear decision on
whether Tennard and Smith announced "new law" is crucial because 

 [u]nder our Texas habeas corpus statute, an applicant may not have the merits
of a subsequent writ considered unless he passes over the threshold of article
11.071, § 5. Thus, if Tennard and Smith announced new law, we may consider
the merits of applicant's claims. If they are mere clarifications of existing and
previously available law, we are statutorily required to dismiss his subsequent
application as an abuse of the writ. On the other hand, federal courts are not
permitted to grant a state petitioner's writ application complaining about a
state-court decision unless the state court's determination of the legal issue was
an unreasonable application of clearly established law as announced by the
Supreme Court. . . . This is all very awkward. To grant a Texas death-row
inmate relief on his subsequent Penry I and Penry II claim under the recently
decided Tennard and Smith cases, we must find that those decisions announced
new law, but the federal courts cannot grant relief on those very same claims
unless they find that Texas courts misapplied clearly established law at the
time of the relevant state-court decision. (10) 


Tennard and Smith cannot simultaneously be both "newly available law" for Texas courts
and "clearly established law" for federal courts. Only the Supreme Court could tell both
federal and state courts which one it is: new law or clearly established law. In Brewer and
Abdul-Kabir, the Supreme Court spoke and clarified this Catch-22: Tennard and Smith, as
well as Penry I and Penry II, were simply factual variations on clearly established law that
went back as far as Jurek itself. (11) Never mind that, as Justice Scalia noted, countless Texas
prisoners were executed in the thirty years between Jurek and Tennard because the Supreme
Court declined to accept certiorari to invoke and apply this clearly established law. (12)

 Applicant claims that the legal basis for his Penry claim was previously unavailable
under article 11.071, § 5(a). But the Supreme Court decisions in Brewer and Abdul-Kabir 
require us to dismiss the present application because we are statutorily prohibited from
considering the merits of a subsequent writ unless that writ relies upon newly available law. 
Otherwise, I would have agreed with applicant and voted to grant a stay of execution and
remand this case to permit the habeas court to consider the merits of applicant's claim. 

 Applicant was tried before the United States decided Penry I. Therefore, the jury was
instructed only on the two statutorily-required special issues. There was no nullification
instruction and there were no special instructions regarding the use of mitigation evidence. 
The facts that he relies upon to make a prima facie showing of meritoriousness under Smith
and Tennard, are


 He was born with a deformed ear;
 An ailing grandmother lived with his family;
 His mother and adoptive grandmother died of disease during his childhood.


According to applicant, the evidence at trial showed that he was traumatized by the death of
his mother during his teen-age years. Prior to Tennard and Smith, neither this Court nor the
Fifth Circuit Court of Appeals considered this type of evidence Penry evidence which
required any special mitigation instruction or special issue. But apparently we were wrong. 
Whatever one might think of the mitigation value of applicant's Penry evidence, justice
should have at least allowed the habeas court to address the merits of applicant's claim if it
could possibly be considered "newly available law" under section 5(a).

 But given the deference that we owe to the Supreme Court's decisions in Brewer and
Abdul-Kabir, I reluctantly agree that we are required to dismiss applicant's subsequent
application for a writ of habeas corpus and his request for a stay of execution. 


Filed: May 8, 2007

Do Not Publish


 
1. See Abdul-Kabir v. Quarterman, No. 05-11284, 2007 U.S. LEXIS 4536, at *59-93
(April 25, 2007) (Roberts, C.J., joined by Scalia, Thomas, & Alito, JJ., dissenting); Brewer v.
Quarterman, No. 05-11287, 2007 U.S. LEXIS 4538, at *19-53 (April 25, 2007) (Roberts, C.J.,
joined by Scalia, Thomas, & Alito, JJ., dissenting).
2. Abdul-Kabir v. Quarterman, 2007 U.S. LEXIS 4536 at *26-42; Brewer v. Quarterman,
2007 U.S. LEXIS 4538 at * 16-19.
3. Jurek v. Texas, 428 U.S. 262 (1976).
4. Abdul-Kabir, 2007 U.S. LEXIS 4536 at *26-42; Brewer, 2007 U.S. LEXIS 4538 at *16-19.
5. Ex parte Hood, 211 S.W.3d 767, 778 (Tex. Crim. App. 2007) (stating that "Penry I
stood as a Supreme Court decision from which an applicant could 'reasonably formulate' the
contention that he was entitled to jury consideration of any type of mitigating evidence.").
6. Id. at 780.
7. Ex parte Hood, 211 S.W.3d at 780-81 (Cochran, J., joined by Womack, Johnson, &
Holcomb, JJ., dissenting).
8. Brewer, 2007 U.S. LEXIS 4538 at *23 (Roberts, C.J., dissenting).
9. Ex parte Hood, 211 S.W.3d at 794-95.
10. Ex parte Hood, 211 S.W.3d at 794-95 (Cochran, J., dissenting) (footnotes omitted).
11. Abdul-Kabir, 2007 U.S. LEXIS 4536 at *26 ("A careful review of our jurisprudence in
this area makes clear that well before our decision in Penry I, our cases had firmly established
that sentencing juries must be able to give meaningful consideration and effect to all mitigating
evidence that might provide a basis for refusing to impose the death penalty on a particular
individual"; stating that three 1976 cases, including Jurek, "identified the background principles
we would apply in later cases to evaluate specific rules inhibiting the jury's ability to give
meaningful effect to such mitigating evidence").
12. See Abdul-Kabir, 2007 U.S. LEXIS 4536 at *92-93 (Scalia, J., dissenting) ("Whether
one regards improved death-is-different jurisprudence with disdain or approval, no one can be at
ease with the stark reality that this Court's vacillating pronouncements have produced grossly
inequitable treatment of those on death row. Relief from sentence of death because of the jury's
inability to give 'full effect' to all mitigating factors has been made available only to those who
have managed to drag out their habeas proceedings until today. This is not justice. It is
caprice.").