OWEN, Circuit Judge,
with whom JOLLY and SMITH, Circuit Judges,
join dissenting:
The dissents of Chief Judge Jones and Judge Clement make salient points. I write to emphasize the standard of review that must be applied and that, given the state of the law when Nelson’s conviction and sentence became final in 1994, the Texas court’s application of United States Supreme Court precedent was not “objectively unreasonable.”[1] The Supreme *354 Court has admonished that in habeas review “the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law.”[2] The majority has failed to draw this distinction. It was not objectively unreasonable to conclude that Nelson’s mitigating evidence was distinguishable from the mental retardation and low intelligence at issue in Penry v. Lynaugh (Penry I),[3] Tennard v. Dretke,[4] and Smith v. Texas,[5] and was instead more similar to the transient qualities of youth at issue in Johnson v. Texas[6] and Graham v. Collins.[7]
I
The Texas Court of Criminal Appeals affirmed Nelson’s sentence on direct review in 1993, rejecting his argument that the special issues submitted to the jury failed to permit adequate consideration of mitigating evidence.[8] That judgment became final when the United States Supreme Court denied review in 1994.[9] Nelson then initiated habeas corpus proceedings.
Habeas review in federal courts of state court proceedings is governed by 28 U.S.C § 2254, and the inquiry before us today is whether the state proceedings “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.”[10] The Supreme Court has held that the phrase “clearly established Federal law, as determined by the Supreme Court” means “the holdings, as opposed to the dicta, of this Court’s decisions as of the time of the relevant state-court decision.”[11]
At the time the Texas Court of Criminal Appeals affirmed the judgment in Nelson’s direct appeal, the Supreme Court’s most recent pronouncements regarding the Texas special issues submitted in death penalty cases tried before 1991 were Graham v. *355 Collins,[12] which considered a habeas petition, and Johnson v. Texas,[13] which was a direct review of a death sentence. Both decisions extensively surveyed the Supreme Court’s jurisprudence regarding mitigating evidence and the Texas special issues under consideration today. In both Graham and Johnson, the primary question was whether the special issues allowed juries to give mitigating effect to a defendant’s youth.[14]
In Graham and Johnson, the Supreme Court discussed its decision in Penry I, a habeas proceeding in which Penry presented evidence indicating that he had a low IQ, had mild to moderate mental retardation, and had been beaten and received multiple head injuries at an early age.[15] The Court held that the Texas special issues did not allow the jury to give effect to all of Penry’s mitigating evidence.[16] Three issues were submitted to the jury, and a “no” answer to any of them would have resulted in a life sentence rather than the death penalty.[17]
The first special issue inquired if Penry acted “deliberately and with the reasonable expectation that the death of the deceased ... would result.”[18] The Supreme Court held that assuming the jury “understood ‘deliberately’ to mean something more than that Penry was guilty of ‘intentionally’ committing murder, those jurors may still have been unable to give effect to Penry’s mitigating evidence.”[19] Penry’s mental retardation, while relevant to whether he was capable of acting “deliberately,” also “ ‘had relevance to [his] moral culpability.’ ”[20] The Supreme Court concluded that because the first special issue did not “defin[e] ‘deliberately’ in a way that would clearly direct the jury to consider Penry’s mitigating evidence as it bears on his personal culpability,” the Supreme Court could not “be sure that the jury was able to give effect to the mitigating evidence of Penry’s mental retardation and history of abuse in answering the first special issue.”[21] The same could be said of Nelson’s borderline personality disorder.
The second special issue inquired “whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing *356 threat to society.”[22] In Penry’s case, “one effect of his retardation [was] his inability to learn from his mistakes.”[23] In Penry I, the Supreme Court reasoned that Pen-ry’s mental retardation was relevant to the future dangerousness issue but “only as an aggravating factor because it suggests a ‘yes’ answer to the question of future dangerousness.”[24] The Court held, “The second special issue, therefore, did not provide a vehicle for the jury to give mitigating effect to Penry’s evidence of mental retardation and childhood abuse.”[25]
Subsequently, in Graham the Supreme Court emphasized that the jury’s answer to the second special issue in Penry’s case could not give effect to the mitigating aspects of his mental retardation and abuse because “[a]lthough Penry’s evidence of mental impairment and childhood abuse indeed had relevance to the ‘future dangerousness’ inquiry, its relevance was aggravating only.”[26] The Graham decision reasoned, “Penry’s evidence compelled an affirmative answer to that [future dangerousness] inquiry, despite its mitigating significance.”[27] By contrast, in Graham, the defendant’s youth “quite readily could have supported a negative answer.”[28]
The Supreme Court’s decision a few months later in Johnson likewise draws a distinction between the type of evidence at issue in Penry I and certain other categories of mitigating evidence.[29] The Court re-confirmed that the constitutionality of jury submissions in death penalty cases turns on “ ‘whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.’ ”[30] In making that determination, the Johnson decision sets forth at least three important, inter-related principles: (1) even if a juror might view the evidence as both aggravating and mitigating, the Eighth Amendment has been satisfied “[a]s long as the mitigating evidence is within ‘the effective reach of a senteneer,’ ”[31] (2) a state is not required to allow a jury “to give effect to mitigating evidence in every conceivable manner in which the evidence might be relevant,”[32] and (3) a state is permitted to structure consideration of relevant mitigating evidence as long as the jury is allowed to give effect to that evidence through at least one vehicle in making the sentencing decision.[33]
In Johnson, the Supreme Court expressly rejected the argument “that the forward-looking perspective of the future dangerousness inquiry did not allow the jury to take account of how petitioner’s *357 youth bore upon his personal culpability for the murder he committed.”[34] The Supreme Court reasoned that the “forward-looking inquiry is not independent of an assessment of personal culpability. It is both logical and fair for the jury to make its determination of a defendant’s future dangerousness by asking the extent to which youth influenced the defendant’s conduct.”[35] The Court also expressly rejected the related argument that the Texas special issues did not permit the jury “to make a ‘reasoned moral response’ ” to the defendant’s youth because the issue inquired only about future dangerousness.[36] The Court concluded that the use of the term “continuing threat to society” in the future dangerousness special issue “afford[ed] the jury room for independent judgment in reaching its decision,” explaining, “Indeed, we cannot forget that ‘a Texas capital jury deliberating over the Special Issues is aware of the consequences of its answers, and is likely to weigh mitigating evidence as it formulates these answers in a manner similar to that employed by capital juries in “pure balancing” States.’ ”[37]
Perhaps most importantly, the Supreme Court held in Johnson that a state may structure consideration of mitigating evidence and that providing one vehicle through which to give effect to mitigating evidence satisfies constitutional requirements.[38] The Court explained, “It is true that Texas has structured consideration of the relevant qualities of petitioner’s youth, but in so doing, the State still ‘allow[s] the jury to give effect to [this] mitigating evidence in making the sentencing decision.’ ”[39] A state is not required to provide more than one avenue for giving effect to mitigating evidence: “Although Texas might have provided other vehicles for consideration of petitioner’s youth, no additional instruction beyond that given as to future dangerousness was required in order for the jury to be able to consider the mitigating qualities of youth presented to it.”[40]
In answering the relevant question on direct review of a death sentence, which is “whether the Texas special issues allowed adequate consideration” of mitigating evidence,[41] the Supreme Court reiterated in Johnson that “a reviewing court must determine ‘whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.’ ”[42] The Court found no such likelihood with regard to a defendant’s youth. “If any jurors believed that the transient qualities of petitioner’s youth made him less culpable for the murder, there is no reasonable likelihood that those *358 jurors would have deemed themselves foreclosed from considering that in evaluating petitioner’s future dangerousness.”[43]
II
Against this backdrop, we must determine whether the Texas court decided Nelson’s case “differently than [the Supreme] Court has on a set of materially indistinguishable facts.”[44] As noted, this is not a direct appeal; Nelson seeks a writ of habeas corpus. “[A] federal habeas court making the ‘unreasonable application’ inquiry [under 28 U.S.C. § 2254(d)(1)] should ask whether the state court’s application of clearly established federal law was objectively unreasonable.”[45] In light of Penry I, Graham, and Johnson, it cannot be said that it would be objectively unreasonable to conclude that Nelson’s mitigating evidence is distinguishable from Penry’s evidence or is more comparable to Graham’s and Johnson’s youth. Even if a court might conclude, as the majority in this case does, that the Texas court incorrectly applied federal law, that is not a basis for granting habeas relief. Again, the Supreme Court has held that “the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law.”[46]
Unlike mental retardation or low intelligence, which are generally static conditions, the evidence regarding Nelson’s borderline personality disorder is not solely aggravating with regard to his future dangerousness. The majority opinion and Chief Judge Jones’s dissent describe the expert testimony in some detail, and I will not duplicate those discussions. The important point is that although Nelson’s expert witness conceded that those suffering from borderline personality disorder can be difficult to treat and there was no guarantee Nelson’s treatment would be successful, the expert opined that Nelson’s disorder was treatable with medication and psychotherapy over a period of two to five years. I agree with Judge Clement’s dissenting opinion that Nelson’s borderline personality disorder falls somewhere on a continuum between Penry’s mental retardation and Graham’s youth.[47]
The established law in Johnson and Graham is that the attributes of youth place it in a different category than mental retardation: “The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.”[48] A *359 jury can give adequate effect to the mitigating aspects of youth in answering the future dangerousness issue because the “forward-looking inquiry is not independent of an assessment of personal culpability. It is both logical and fair for the jury to make its determination of a defendant’s future dangerousness by asking the extent to which youth influenced the defendant’s conduct.”[49] The future dangerousness issue is adequate even though a jury is free to conclude that youth did not influence the defendant’s conduct or that the attributes of youth, such as impetuousness and recklessness, will not subside as to this defendant. It was not unreasonable for the Texas court to conclude that the same can be said of the evidence regarding Nelson’s borderline personality disorder and the prospects for its treatment. The jury may have concluded that Nelson’s disorder was treatable, or that it was not, just as juries may conclude that the attributes of youth are not transient as to a particular defendant. A court conducting a direct review of the Texas court’s decision to place the evidence of Nelson’s borderline personality disorder in the same category as youth might conclude that the Texas court erred, but it was not unreasonable for the Texas court to treat Nelson’s evidence as similar to evidence of youth, given the Supreme Court’s precedent.
The evidence also reflected that Nelson’s mother did not love him and shunned him. Nelson’s expert testified that his mother’s conduct likely contributed to or exacerbated Nelson’s borderline personality disorder. To the extent Nelson’s abusive treatment from his mother must be considered independently from his mental condition, it is not unreasonable to conclude that this evidence, as well as evidence regarding Nelson’s troubled relationships with his brother and women and his inability to have a relationship with his child born out of wedlock, is more similar to “Graham’s evidence of transient upbringing and otherwise nonviolent character”[50] than it is to the harsh, physical abuse inflicted upon Penry as a child.[51] The Texas court did not unreasonably apply the Supreme Court’s holding in Graham and Johnson that additional instructions or an additional jury issue are not required simply because mitigating evidence has some arguable relevance beyond the special issues. The Supreme Court said in both Graham and Johnson:
[Hjolding that a defendant is entitled to special instructions whenever he can offer mitigating evidence that has some arguable relevance beyond the special issues ... would be to require in all cases that a fourth “special issue” be put to the jury: “ ‘Does any mitigating evidence before you, whether or not relevant to the above [three] questions, lead you to believe that the death penalty should not be imposed?’ ”[52]
The Court observed that “[t]he first casualty of a holding [that would require an additional issue whenever evidence had some relevance beyond the special issues] would be Jurek. The inevitable consequence of petitioner’s argument is that the Texas special issues system in almost every case would have to be supplemented by a further instruction.”[53] The Supreme *360 Court held that as long as “a jury [was] able to consider in some manner all of a defendant’s relevant mitigating evidence,” a state was not required to allow a jury “to give effect to mitigating evidence in every conceivable manner in which the evidence might be relevant.”[54] The Texas court was not unreasonable in applying this precedent.
Additionally, during closing arguments, the prosecutor twice suggested that the jury might conclude that Nelson was not morally culpable for the murder because of his mother’s or others’ treatment of him and urged the jurors not to do so.[55] This indicates it was unlikely the jury thought that it could not give effect to evidence of childhood abuse in considering Nelson’s moral culpability and answering the future dangerousness issue. As was the case in Ayers v. Belmontes, “It is improbable the jurors believed that the parties were engaging in an exercise in futility when respondent presented (and both counsel later discussed) his mitigating evidence in open court.”[56] At the very least, the record indicates that the Texas court would not have been unreasonable in concluding the jury could give effect to this evidence.
As to evidence of Nelson’s substance abuse, no one questions that the deliberateness issue provided an adequate vehicle.
Ill
The Supreme Court’s post-1994 decisions in Penry v. Johnson (Penry II),[57] Tennard v. Dretke,[58] and Smith v. Texas[59] do not render the Texas court’s application of established Supreme Court precedent unreasonable. None of those decisions holds that additional instructions or another issue is necessary when mitigating evidence can be given effect in answering either the “deliberately” special issue or the “future dangerousness” special issue under pre-1991 Texas law.
In Penry II, Penry had been retried subsequent to Penry I, and the trial court submitted a third issue, in addition to the “deliberately” and “future dangerousness” issues.[60] The Supreme Court held that the third issue was subject to two possible interpretations, and that neither interpretation cured the infirmity of the first two issues as applied to Penry’s evidence.[61] The third issue either had no practical effect[62] or essentially directed the jury to change truthful “yes” answers to the first two issues to “no.”[63]
*361 In Penry II, in a “see also” cite, the Court quoted from Justice O’Connor’s dissent in Johnson, noting in a parenthetical, “ ‘[A] sentencer [must] be allowed to give full consideration and full effect to mitigating circumstances’ (emphasis in original).”[64] But in the very next sentence, the Court adhered to Penry I, requiring only “a ‘vehicle for expressing its “reasoned moral response” to that evidence in rendering its sentencing decision.’ ”[65] The reference to “full effect” and “full consideration” cannot be taken as a retraction of one of Johnson’s core holdings: “Although Texas might have provided other vehicles for consideration of petitioner’s [mitigating evidence], no additional instruction beyond that given as to future dangerousness was required in order for the jury to be able to consider the mitigating qualities of youth presented to it.”[66]
In Tennard, the Supreme Court considered in some detail what constitutes mitigating evidence, explaining that the threshold was a low one in deciding if there was a mitigating aspect.[67] The Court rejected this circuit’s “uniquely severe permanent handicap” and “nexus” tests and held “that reasonable jurists would find debatable or wrong” the state court’s disposition of “Tennard’s low-IQ-based Penry claim.”[68]
In Smith, the Supreme Court again quoted the passage from Justice O’Con-nor’s dissenting opinion in Johnson that said a sentencer must be allowed to give “ full effect to mitigating circumstances.’”[69] At issue was a nullification question, similar but not identical to the one submitted in Penry J/,[70] that “ ‘essentially instructed [the jury] to return a false answer to a special issue in order to avoid a death sentence.’ ”[71] The Supreme Court explained in Smith the import of its holdings in Tennard and Penry IP.
Rather, we held that the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a “low threshold for relevance,” which is satisfied by “ ‘evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.’ ”[72]
The Court held in Smith that “the burden of proof on the State was tied by law to findings of deliberateness and future dangerousness that had little, if anything, to do with the mitigation evidence petitioner presented.”[73] Smith had a low IQ and was placed in special education classes, indicating low intelligence, a condition that was *362 not transient or treatable.[74] Similarly, in Tennard, the defendant had an IQ of 67, indicating low intelligence.[75] No mitigating effect could be given to low intelligence through a jury’s answer to the future dangerousness issue.[76] It is not unreasonable to conclude that Nelson’s borderline personality disorder and potential treatment for that condition is distinguishable from Smith’s and Tennard’s mitigating circumstances in this regard.
Neither Tennard nor Smith purports to overrule the holding in Johnson that a state is only required to provide one avenue for giving effect to mitigating evidence, not multiple vehicles.[77] A “no” answer to the future dangerousness issue based on Nelson’s mitigating evidence would have given full effect to that evidence. To paraphrase Johnson, if any jurors believed that Nelson’s borderline personality disorder was transient because it was treatable and his condition made him less culpable for murder, there is no reasonable likelihood that those jurors would have deemed themselves foreclosed from considering that in evaluating Nelson’s future dangerousness.[78]
* * * * *
The Texas court was not objectively unreasonable in applying the Supreme Court’s established precedent to the facts presented. It was not objectively unreasonable to conclude that evidence of Nelson’s borderline personality disorder and the prospects for its treatment was less similar to mental retardation[79] and low intelligence[80] and more similar to the transient qualities of youth.[81] Accordingly, I dissent.

. Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("Stated simply, a federal habeas court making the 'unreasonable application’ inquiry should ask *354 whether the state court’s application of clearly established federal law was objectively unreasonable.”); see also Brown v. Payton, 544 U.S. 133, 147, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) ("Even were we to assume the ' "relevant state-court decision applied clearly established federal law erroneously or incorrectly,” ’ there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.' ”) (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting Williams, 529 U.S. at 411, 120 S.Ct. 1495)) (internal citations omitted).

. Williams, 529 U.S. at 410, 120 S.Ct. 1495.

. 492 U.S. 302, 109 S.Ct 2934, 106 L.Ed.2d 256 (1989).

. 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004).

. 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004).

. 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

. 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

. Nelson v. State, 864 S.W.2d 496 (Tex.Crim.App.1993), cert. denied, 510 U.S. 1215, 114 S.Ct 1338, 127 L.Ed.2d 686 (1994). The portion of the Texas Court of Criminal Appeals’s opinion addressing Nelson's mitigating evidence and the special issues submitted to the jury is unpublished.

. 510 U.S. at 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686.

. 28 U.S.C. § 2254(d)(1) (2000).

. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); see also id. ("[Wjhatever would qualify as an old rule under our Teague jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States.’ ”) (referencing Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)).

. 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

. 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). The Texas Court of Criminal Appeals affirmed Nelson’s conviction and sentence on May 26, 1993, before Johnson v. Texas issued, but the Texas court did not deny rehearing until October 6, 1993, after Johnson had issued on June 24, 1993.

. Graham, 506 U.S. at 463, 113 S.Ct. 892; Johnson, 509 U.S. at 352, 113 S.Ct. 2658.

. Penry v. Lynaugh, 492 U.S. 302, 307-09, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

. Id. at 328, 109 S.Ct. 2934.

. Id. at 310, 322-25, 109 S.Ct. 2934.

. Id. at 322, 109 S.Ct. 2934.

. Id.

. Id. (quoting Franklin v. Lynaugh, 487 U.S. 164, 185, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion)).

. Id. at 323, 109 S.Ct. 2934. The Supreme Court further reasoned:
Without such a special instruction, a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime “deliberately.” Thus, we cannot be sure that the jury's answer to the first special issue reflected a “reasoned moral response” to Penry's mitigating evidence.

Id.

. Id.

. Id.

. Id.

. Id. at 324, 109 S.Ct. 2934.

. Graham v. Collins, 506 U.S. 461, 473, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

. Id. at 475, 113 S.Ct. 892.

. Id. at 475-76, 113 S.Ct. 892.

. Johnson v. Texas, 509 U.S. 350, 368-70, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

. Id. at 367, 113 S.Ct. 2658 (quoting Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

. Id. at 368, 113 S.Ct. 2658 (quoting Graham, 506 U.S. at 475-76, 113 S.Ct. 892).

. Id. at 372, 113 S.Ct. 2658.

. Id. at 370, 113 S.Ct. 2658; see also id. at 373, 113 S.Ct. 2658 ("To rule in petitioner’s favor, we would have to require that a jury be instructed in a manner that leaves it free to depart from the special issues in every case. This would, of course, remove all power on the part of the States to structure the consideration of mitigating evidence — a result we have been consistent in rejecting.”).

. Id. at 369, 113 S.Ct. 2658.

. Id.; see also Ayers v. Belmontes, - U.S. -, 127 S.Ct. 469, 475, 166 L.Ed.2d 334 (2006) (citing Johnson, 509 U.S. at 369, 113 S.Ct. 2658, for the proposition that "the 'forward-looking' future-dangerousness inquiry 'is not independent of an assessment of personal culpability.’ ").

. Johnson, 509 U.S. at 370, 113 S.Ct. 2658.

. Id. at 370-71, 113 S.Ct. 2658 (quoting Franklin v. Lynaugh, 487 U.S. 164, 182 n. 12, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion)).

. Id. at 370, 113 S.Ct. 2658.

. Id. (quoting Saffle v. Parks, 494 U.S. 484, 491, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).

. Id.

. Id. at 367, 113 S.Ct. 2658.

. Id. (quoting Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

. Id. at 370, 113 S.Ct. 2658.

. Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (construing 28 U.S.C. § 2254(d)(1), which provides, "An application for a writ of habeas corpus ... shall not be granted ... unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States”); see also id. at 406, 120 S.Ct. 1495 ("A state-court decision will ... be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.”).

. Id. at 409, 120 S.Ct. 1495.

. Id. at 410, 120 S.Ct. 1495.

. See Graham v. Collins, 506 U.S. 461, 475, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) ("The jury was not forbidden to accept the suggestion of Graham's lawyers that his brief spasm of criminal activity in May 1981 was properly viewed, in light of his youth, his background, and his character, as an aberration that was not likely to be repeated.”).

. Johnson, 509 U.S. at 368, 113 S.Ct. 2658.

. Id. at 369, 113 S.Ct. 2658.

. Graham, 506 U.S. at 476, 113 S.Ct. 892.

. Penry v. Lynaugh, 492 U.S. 302, 308-09, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

. Johnson, 509 U.S. at 372, 113 S.Ct. 2658 (quoting Graham, 506 U.S. at 476, 113 S.Ct. 892 (quoting Franklin v. Lynaugh, 487 U.S. 164, 180 n. 10, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion))).

.Id. (referencing Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)).

. Id. (“In addition to overruling Jurek, accepting petitioner’s arguments would entail an alteration of the rule of Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)] and Eddings [v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)].”).

. The prosecutor argued, "You are going to hear some Billy, Billy, Billy, Billy, and before this is all said and done, this whole grizzly, horrible thing is going to be hung around the neck of his mother,” and, "We live — like I say, we are going to hang this, before it is over we are going to hang it around the neck of some school teacher or some football coach. We are going to hang this around the neck of everybody but him.”

. - U.S. -, 127 S.Ct. 469, 476, 166 L.Ed.2d 334 (2006).

. 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001).

. 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004).

. 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004).

. Penry II, 532 U.S. at 786, 121 S.Ct. 1910.

. Id. at 798, 121 S.Ct. 1910.

. Id.

. Id. at 799, 121 S.Ct. 1910.

. Id. at 797, 121 S.Ct. 1910 (quoting Johnson v. Texas, 509 U.S. 350, 381, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (O’Connor, J., dissenting)).

. Id. (quoting Penry v. Lynaugh, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)) (emphasis added).

. Johnson, 509 U.S. at 370, 113 S.Ct. 2658.

. Tennard v. Dretke, 542 U.S. 274, 282-89, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004).

. Id. at 289, 124 S.Ct. 2562.

. Smith v. Texas, 543 U.S. 37, 46, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004) (quoting Johnson, 509 U.S. at 381, 113 S.Ct. 2658 (O'Con-nor, J., dissenting)).

. Penry v. Johnson, 532 U.S. 782, 797-98, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001).

. Smith, 543 U.S. at 48, 125 S.Ct. 400 (quoting Penry II, 532 U.S. at 801, 121 S.Ct. 1910).

. Id. at 44, 125 S.Ct. 400 (quoting Tennard, 542 U.S. at 284-85, 124 S.Ct. 2562 (quoting McKoy v. North Carolina, 494 U.S. 433, 440, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990))) (internal quotation omitted).

. Id. at 48, 125 S.Ct. 400.

. Id. at 41.

. 542 U.S. at 277, 124 S.Ct. 2562.

. Id. at 288-89, 124 S.Ct. 2562.

. See Johnson v. Texas, 509 U.S. 350, 370, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

. See id.

. See Penry v. Lynaugh, 492 U.S. 302, 322, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

. See Smith v. Texas, 543 U.S. 37, 41, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004); see also Tennard, 542 U.S. at 277, 124 S.Ct. 2562.

. See Johnson, 509 U.S. at 368, 113 S.Ct. 2658; see also Graham v. Collins, 506 U.S. 461, 463-64, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).