

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**AP-76,035**

---

**EX PARTE ROY GENE SMITH, Applicant**

---

**On Application for Writ of Habeas Corpus
in Cause No. 512673-B of the 208th Judicial District Court,
Harris County**

---

*WOMACK, J., delivered the opinion of the unanimous Court.*

This is a subsequent post-conviction application for writ of habeas corpus. The applicant

claims that he is entitled to relief from his death sentence "because he presented significant

mitigating evidence related to his moral culpability and the appropriateness of a death sentence

that could not be given full effect by the sentencing jury." We find that the trial court erred by not

providing the jury a constitutionally adequate vehicle by which it could fully consider and give

effect to the applicant's relevant evidence of poverty, a crime-ridden neighborhood, and drug

addiction. We also find that the applicant was egregiously harmed by this error. We therefore

remand to the trial court for new punishment proceedings.

# I. Constitutional Background

The United States Supreme Court has established two key principles that guide the process by which a jury may assess the death penalty.[1] First, while the death penalty is not *per se* cruel and unusual punishment in violation of the Eighth Amendment,[2] a jury's discretion to assess the death penalty "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."[3] Second, the jury must be provided a vehicle by which to fully consider and give effect to mitigating evidence of "the character and record of the individual offender and the circumstances of the offense."[4]

With respect to the second principle, the Supreme Court has held that the mitigating evidence must first be relevant. Relevant evidence in this context is "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value."[5] A vehicle need not be provided when the evidence has "only a

---

[1] *See Johnson v. Texas*, 509 U.S. 350, 360 (1993) (recognizing "some tension" between the two principles).

[2] *Gregg v. Georgia*, 428 U.S. 153, 169 (1976).

[3] *Id.*, at 189 (citing *Furman v. Georgia*, 408 U.S. 238 (1972)).

[4] *Woodson v. North Carolina*, 428 U.S. 280, 303-05 (1976); *see also Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of the defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death.") (emphasis in original); *Penry v. Lynaugh*, 492 U.S. 302, 318 (1989) (*Penry I*) ("Underlying *Lockett* and *Eddings* [*v. Oklahoma*, 455 U.S. 104 (1982),] is the principle that punishment should be directly related to the personal culpability of the criminal defendant.").

[5] *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *State v. McKoy*, 372 S.E.2d 12, 45 (N.C. 1988) (Exum, C.J., dissenting)); *see also Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004) ("'[T]he meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding' than in any other context . . .") (quoting *McKoy*, 494 U.S., at 440); TEX. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

tenuous connection–'*some* arguable relevance'– to the defendant's culpability," but only when the evidence "may have meaningful relevance to the defendant's moral culpability 'beyond the scope of the special issues.'"[6] Once this "low threshold for relevance"[7] is met, the jury must be provided an adequate vehicle by which to fully consider and give effect to the evidence.

At the time the applicant was sentenced, the jury was required to answer special issues of deliberateness, future dangerousness, and, if raised by the evidence, provocation. The Supreme Court found that these special issues adequately directed and limited the jury's discretion.[8] But if a defendant presented relevant mitigating evidence that was outside the scope of the special issues,[9] or that had an aggravating effect when considered within the scope of the special issues,[10] the special issues were a constitutionally inadequate vehicle for the jury to fully consider and give effect to the mitigating evidence.[11] Where the special issues were an inadequate vehicle, a "nullification instruction," such as the one given to the applicant's jury, was insufficient to cure the constitutional inadequacy of the special issues.[12]

---

[6] *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 253 n.14 (2007) (emphasis in original).

[7] *Tennard*, 542 U.S., at 285.

[8] *Jurek v. Texas*, 428 U.S. 262, 271 (1976).

[9] *Compare Abdul-Kabir*, 550 U.S., at 261 (finding evidence of "particularized childhood experiences of abuse and neglect" to be outside the scope of the special issues) *with Graham v. Collins*, 506 U.S. 461, 476 (1993) (finding evidence of youth, transient upbringing, and nonviolent character to be within the scope of the special issues) *and Johnson*, 509 U.S., at 368 (finding evidence of youth to be within the scope of the special issues).

[10] *See, e.g., Brewer v. Quarterman*, 550 U.S. 286, 294-95 (2007) ("[T]he Texas special issues do not provide for adequate consideration of a defendant's mitigating evidence when that evidence functions as a 'two-edged sword.'").

[11] *Penry I*, 492 U.S., at 328.

[12] *Penry v. Johnson*, 532 U.S. 782, 804 (2001) (*Penry II*).

## II. Procedural History

### A. Trial

In May 1990, a jury convicted the applicant of capital murder. At the conclusion of the punishment phase, the trial court instructed the jury to answer three special issues:

(1) Was the conduct of the defendant, Roy Gene Smith, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

(2) Is there a probability that the defendant, Roy Gene Smith, would commit criminal acts of violence that would constitute a continuing threat to society?

(3) Was the conduct of the defendant, Roy Gene Smith, in killing the deceased unreasonable in response to the provocation, if any, by the deceased?

In response to *Penry I*, the trial court also gave the jury the following "nullification instruction":

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to that special issue under consideration.

The jury answered the special issues affirmatively and did not employ the nullification instruction. The trial court sentenced the applicant to death.

### B. Direct Appeal

The applicant appealed his conviction and sentence directly to this Court. In his first point of error, the applicant contended that "the trial court erred by giving the jury an

unauthorized instruction on mitigation which failed to advise them of a comprehensible method of determining and utilizing mitigating evidence."[13] We found that the nullification instruction was "sufficient to overcome the constitutional infirmity of *Penry* [*I*]."[14] We also found that the applicant "failed to make a contemporaneous objection to the court's charge,"[15] and ultimately affirmed the judgment and sentence of the trial court.

C. Initial State Application

In April 1997, the applicant filed his initial state application for writ of habeas corpus. He claimed that he was denied the effective assistance of counsel because his counsel failed to adequately investigate his history and retain a mitigation specialist.[16] The trial court made the following findings of fact describing the applicant's mitigating evidence:

> 10. During the punishment phase of trial, the applicant testified that he used drugs twenty-four hours a day every day of the week, and that the drugs must have put him in the position that he was in as a result of the crime.
>
> 11. During the punishment phase of trial, the applicant testified that other crimes he had committed were influenced by "drinking heavy and smoking weed."
>
> 12. During the punishment phase of trial, the applicant testified that he needed money to support his habit.
>
> . . .
>
> 15. During the punishment phase of trial, the applicant's mother testified that the applicant's father died in 1971.

---

[13] *Roy Gene Smith v. State*, No. 71,099, slip op. at 1 (Tex. Cr. App. Feb. 24, 1993) (not designated for publication).

[14] *Id.*, at 2.

[15] *Id.*, at 2-3.

[16] *Ex parte Roy Gene Smith*, No. WR-42,801-01 (Tex. Cr. App. Sep. 29, 1999) (not designated for publication).

16. During the punishment phase of trial, the applicant's mother testified that she currently supports herself by welfare while living in a house with thirteen other family members.

17. During the punishment phase of trial, the applicant's mother testified that she lived in a high-crime area, and that she would have left the neighborhood if she could have afforded to move.

18. During the punishment phase of trial, the applicant's mother testified that the applicant attempted to help raise his son and that the applicant worked at a steel plant in Baytown.

. . .

20. During the punishment phase of trial, the applicant's mother testified that the applicant did well when he was staying in the penitentiary.

. . .

22. During the punishment phase of trial, the applicant's sister described the neighborhood in which the applicant lived, including the prevalence of drugs, robberies, and prostitution.

23. During the punishment phase of trial, the applicant's sister related an incident where both she and the applicant were robbed at gun-point in the middle of the street.

24. During the punishment phase of trial, the applicant's sister stated that the applicant had been raised in the church.

In an unpublished order, we stated that we had reviewed the record and that "[t]he findings and conclusion by the trial court are supported by the record."[17] We denied relief on this basis.

## D. Federal Petition

In May 2000, the applicant filed a petition for writ of habeas corpus in federal district court. The district court dismissed the petition,[18] but the United States Court of Appeals for the

---

[17] *Id*.

[18] *Roy Gene Smith v. Cockrell*, CA No. H-00-1771 (S.D.Tex. March 31, 2003).

Fifth Circuit granted a certificate of appealability on two issues: (1) whether the applicant's trial counsel provided ineffective representation, and (2) whether the jury instructions at the sentencing phase violated *Penry I*.[19]

The Fifth Circuit ultimately denied relief on both issues.[20] With respect to *Penry I*, the Fifth Circuit discussed four categories of mitigating evidence: "poverty; drug addiction and intoxication; character evidence; and growing up in the crime-ridden neighborhood of the Fifth Ward of Houston."[21] The Fifth Circuit found that the jury was able to give full effect and express their reasoned moral response to the applicant's evidence of drug addiction and intoxication through the special issues. If jurors determined that the applicant's substance abuse hindered his ability to make a conscious decision to commit capital murder, they could have answered the deliberateness special issue in the negative.[22] If jurors reasonably assumed that the applicant would not have access to drugs and could receive rehabilitative services in prison, and therefore his proclivities toward violent behavior would lessen after overcoming his addictions, the jurors could have answered the future-dangerousness special issue in the negative.[23] The Fifth Circuit did not find authority for drug addiction as a mitigating factor that could reduce a defendant's moral culpability outside its relevance to the special issues.[24]

---

[19] *Roy Gene Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005).

[20] *Roy Gene Smith v. Quarterman*, 515 F.3d 392 (5th Cir. 2008).

[21] *Id.*, at 407.

[22] *Id.*, at 409.

[23] *Id.*, at 409-10.

[24] *Id.*, at 410.

The Fifth Circuit also found that the applicant's evidence of growing up in an impoverished and crime-ridden neighborhood was "clearly relevant mitigating evidence," and was outside the scope of the special issues,[25] but ultimately had "only a tenuous connection to any attempt to diminish [the applicant's] moral culpability for his crime."[26] The types of experiences the applicant presented were not "particularized childhood experiences of abuse and neglect."[27] In fact, the only specific example of victimization that the applicant presented occurred in 1988, when the applicant was at least 29 years old.[28] The Fifth Circuit emphasized that "our holding here is a narrow one, based on our detailed review of the record which contains no evidence of a connection between the poverty and crime of the Fifth Ward and [the applicant's] character."[29]

## III. Analysis

The applicant now claims that he is entitled to relief "because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence that could not be given full effect by the sentencing jury."[30] The applicant specifically cites the following mitigating evidence:

---

[25] *Id.*, at 412.

[26] *Id.*, at 413 (citing *Abdul-Kabir*, 550 U.S., at 253 n.14).

[27] *Id.*, at 414 (quoting *Abdul-Kabir*, 550 U.S., at 261).

[28] *Id.*, at 414.

[29] *Id.*

[30] The State agrees that we may consider the merits of this subsequent application in light of the new law announced by the Supreme Court in *Penry II*, 532 U.S., at 804 (finding a nullification instruction insufficient to cure the constitutional inadequacy of special issues). *Penry II* was unavailable as a legal basis for the Applicant's claim at the time of his direct appeal and initial application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.07, § 5.

> [The applicant's] family lived in poverty, caused in part by the loss of his father when he was 12 years old. [The applicant's] mother, . . . working as a maid, could not afford to move the family from Houston's "Fifth Ward," a dangerous neighborhood filled with prostitution, drugs, and crime. At the time of the crime, fourteen people lived in [the applicant's mother's] three-bedroom home. [The mother of the applicant's son] was violently killed, so [the applicant's mother] took [the applicant's son] into her house as well. Shortly before the crime, [the applicant] and his younger sister, . . . were violent crime victims themselves – with [the applicant's] sister forced to strip in public in front of him, and [the applicant] assaulted with a gun that misfired as it was held to his temple. Surrounded by drugs and poverty all his life, [the applicant] became a drug addict, using crack whenever he could get a hold of it. Lacking education and any job skills or opportunities, [the applicant] began to steal to support his addiction.[31]

The applicant argues that this evidence "gave important context to [his] crimes, and a properly instructed jury could well have concluded that [he] was less deserving of the death penalty as a result of his own deprivations, victimization, and addiction." He further argues that the trial court erred because the evidence could not be given meaningful effect under the special issues, and the nullification instruction did not correct that problem. Finally, he argues that he preserved this error at trial, and in any event he was egregiously harmed by the error. In the alternative, he invites us to reconsider whether harm analysis is appropriate for errors of this type.

The State does not contest the insufficiency of the nullification instruction to cure any error in the special issues. Instead, the State follows the reasoning of the Fifth Circuit and argues that some of the applicant's evidence did not warrant a vehicle for its consideration, and the special issues were a sufficient vehicle for other evidence. To demonstrate error, therefore, the applicant must show that his mitigating evidence (1) was relevant, and (2) was either outside the scope of the special issues, or had an aggravating potential when considered within the scope of

---

[31] The Applicant's description of his mitigating evidence largely mirrors the findings of fact produced by the trial court in response to the Applicant's initial writ application, as well as the mitigating evidence described by the Fifth Circuit. The State does not dispute this description of the mitigating evidence.

the special issues. The mitigating evidence cited by the applicant may be broken into three categories for the purposes of our analysis: (A) poverty and crime-ridden neighborhood, (B) victimization, and (C) drug addiction.[32]

### A. Poverty and Crime-Ridden Neighborhood

The Fifth Circuit found that the applicant's evidence of poverty and a crime-ridden neighborhood was "clearly relevant mitigating evidence" and did not fit within the special issues.[33] Nevertheless, based on its interpretation of *Tennard*, *Brewer*, and particularly footnote 14 of *Abdul-Kabir*,[34] the Fifth Circuit stated that "the inquiry does not end here."[35] The Fifth Circuit proceeded to explain that the jury did not need an adequate vehicle because the evidence had "only a tenuous connection to any attempt to diminish [the applicant's] moral culpability for his crime."[36]

We do not find the Fifth Circuit's interpretation of *Tennard*, *Brewer*, and *Abdul-Kabir* to be persuasive. In our opinion, a fair reading of those cases suggests that the "inquiry" consists of

---

[32] In *Roy Gene Smith v. Quarterman*, the Fifth Circuit analyzed the same arguments that are before us. We are not bound by the conclusions of the Fifth Circuit, but we will adopt its reasoning if it is persuasive. *See Guzman v. State*, 85 S.W.3d 242, 249 n. 24 (Tex. Cr. App. 2002) ("Although we are not required to follow lower federal court interpretations of a federal constitutional right, we may find the reasoning in those cases persuasive.").

[33] *Roy Gene Smith v. Quarterman*, 515 F.3d, at 412.

[34] *Abdul-Kabir*, 550 U.S., at 253 n. 14 ("The rule that we reaffirm today–a rule that has been clearly established since our decision in *Penry I*–is this: Special instructions are necessary when the jury could not otherwise give meaningful effect to a defendant's mitigating evidence. The rule is narrower than the standard urged by *Graham* because special instruction is not required when mitigating evidence has only a tenuous connection-'some arguable relevance'-to the defendant's moral culpability. But special instruction is necessary when the defendant's evidence may have meaningful relevance to the defendant's moral culpability 'beyond the scope of the special issues.'") (internal citations omitted).

[35] *Roy Gene Smith v. Quarterman*, 515 F.3d, at 412.

[36] *Id.*, at 413.

only two steps: (1) whether the evidence is relevant, and (2) whether the evidence falls outside the scope of the special issues or may be considered aggravating when considered within the scope of the special issues.[37] We understand footnote 14 of *Abdul-Kabir* to further define the "low threshold for relevance,"[38] rather than to add a separate third step to the inquiry.

Furthermore, a jury could find that the applicant's evidence of life in poverty and a crime-ridden neighborhood does have more than a "tenuous connection" to his moral culpability. This evidence tends logically to prove that the applicant suffered the sort of deprived and troubled childhood that a fact-finder could reasonably deem to have mitigating value.[39] As with general questions of relevance, the evidence "need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence."[40] The weight of the applicant's mitigating evidence may be significantly less than the evidence of "particularized childhood experiences of abuse and neglect"[41] in *Penry I*, *Abdul-Kabir*, and several cases decided by this Court.[42] But questions of the

---

[37] *Tennard*, 542 U.S., at 284-85; *Brewer*, 550 U.S., at 294.

[38] *Tennard*, 542 U.S., at 285.

[39] *See McKoy*, 494 U.S., at 440 (Relevant evidence is "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value."). In the language of Texas Rule of Evidence 401, the Applicant's evidence of life in poverty and a crime-ridden neighborhood is relevant because it has a tendency to make a deprived and troubled childhood more probable than it would be without the evidence.

[40] *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Cr. App. 2004).

[41] *Abdul-Kabir*, 550 U.S., at 261.

[42] *See, e.g., Ex parte Hathorn*, 296 S.W.3d 570, 572-73 (Tex. Cr. App. 2009) (neglect, physical and emotional abuse, and violent and dysfunctional home environment); *Moreno v. State*, 245 S.W.3d 419 (Tex. Cr. App. 2008) (adoption, deformity, and unstable home).

weight or sufficiency of the evidence are not before us. The question before us is whether the evidence meets the "low threshold for relevance."[43]

We agree with the Fifth Circuit that this evidence was outside the scope of the special issues.[44] Because the evidence was relevant and outside the scope of the special issues, we therefore find that the trial court erred in failing to provide a constitutionally adequate vehicle for its consideration.

## B. Victimization

The applicant alleges that "just before the commission of the present offense," he and his sister were violently assaulted, and he was "humiliated by his inability to protect his sister from assault." We find that this evidence of victimization "shortly before the crime" fell within the scope of the future-dangerousness special issue as a transient feature of the applicant's character.[45] This evidence was mitigating within the special issue because, if the jury believed that the applicant's crime was only a reaction to the lingering humiliation, stress, or other effects from the assault, they would have answered the special issue in the negative. The trial court did not err with respect to this evidence.

## C. Drug Addiction

The Fifth Circuit did not find precedent "consider[ing] drug addiction as a mitigating factor that reduces a criminal defendant's moral culpability outside its relevance to the special

---

[43] *Tennard*, 542 U.S., at 283-87.

[44] *Roy Gene Smith v. Quarterman*, 515 F.3d, at 412.

[45] *See Johnson*, 509 U.S., at 368 ("The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside. We believe there is ample room in the assessment of future dangerousness for a juror to take account of the difficulties of youth as a mitigating force in the sentencing determination.").

issues."[46] We, however, do find such precedent. In *Brewer*, the Supreme Court did not discuss independently the defendant's evidence of drug abuse, but found it to be among evidence that operated as a "'two-edged sword' because it tended to confirm the State's evidence of future dangerousness as well as to lessen his culpability for the crime."[47] Similarly, in *Martinez v. State*,[48] we did not discuss independently the defendant's evidence of alcohol abuse since the age of thirteen, but found it to be among evidence that did not negate the special issues and provided "an explanation for his behavior that might reduce his moral culpability."[49]

In light of *Brewer* and *Martinez*, we find that the applicant's evidence of a severe drug addiction that was supported by proceeds from violent crime is both relevant and outside the scope of the special issues. The evidence tends logically to show that the applicant's ability to exercise moral judgment (as compared to his ability to exercise control of his conduct) was overcome by his severe drug addiction. A fact-finder could reasonably deem this circumstance to have mitigating value. While it did not disprove deliberateness or future dangerousness, it was an explanation for his behavior that might reduce his moral culpability.[50] The trial court therefore erred in failing to provide the jury a constitutionally adequate vehicle by which to fully consider and give effect to the evidence.

---

[46] *Roy Gene Smith v. Quarterman*, 515 F.3d, at 410.

[47] *Brewer*, 550 U.S., at 292-93.

[48] 233 S.W.3d 319 (Tex. Cr. App. 2007).

[49] *Id*., at 323 (citing *Abdul-Kabir*).

[50] Again, we make no comment on the weight of this evidence. We also do not imply that evidence of drug addiction or substance abuse will always be relevant mitigating evidence and outside the scope of the special issues regardless of the specific evidence of addiction or abuse introduced by the defendant.

## IV. Harm

The constitutional error in this case was in the failure of the special issues to provide a vehicle for the jury to consider the applicant's mitigating evidence, rather than the failure of the nullification instruction to provide such a vehicle.[51] Despite this error in the special issues, we shall not grant relief from the judgment unless the applicant demonstrates harm.[52] If the error was not objected to at trial, we shall grant relief only if "the error is so egregious and created such harm that [the applicant] 'has not had a fair and impartial trial.'"[53] Error creating egregious harm is also described as error that must "go to the very basis of the case," or "vitally affect [the defendant's] defensive theory."[54]

In our 1993 opinion on direct appeal, we found that the applicant had "failed to make a contemporaneous objection to the court's charge."[55] In this subsequent writ application, the applicant argues that this finding requires reexamination in light of *Laroyce Smith II*. The applicant alleges that before the trial, he objected to

> former Article 37.071 of the Code of Criminal Procedure as "den[ying] the Defendant protection from cruel and unusual punishment," specifically because the statutorily mandated special issues did not allow jurors to answer "the life or

---

[51] *Laroyce Smith v. Texas*, 550 U.S. 297, 313-14 (2007) (*Laroyce Smith II*) (finding constitutional error in the special issues and error preserved upon objection to the special issues, despite lack of objection to the nullification instruction).

[52] TEX. CODE CRIM. PROC. art. 36.19; *Ex parte Laroyce Smith*, 185 S.W.3d 455, 463-64 (Tex. Cr. App. 2006), *rev'd on other grounds by Laroyce Smith II*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Cr. App. 1985).

[53] *Almanza*, 686 S.W.2d, at 171; *see also Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Cr. App. 2009) (In the context of *Penry* error, "normally, an egregious harm standard is proper in analyzing un-objected-to charge error."); *Ex parte Laroyce Smith*, 185 S.W.3d, at 463 ("The *Almanza* standard applies both on direct appeal and on the review of habeas corpus applications.").

[54] *Almanza*, 686 S.W.2d, at 172; *Ex parte Laroyce Smith*, 185 S.W.3d, at 464 n.23 (applying *Almanza*).

[55] *Roy Gene Smith v. State*, No. 71,099, slip op. at 2-3.

death question;" the statute permitted the court only to submit "these three (3) rather meaningless issues, affirmative answers to which result in a mandatory death sentence." When this motion was considered by the court as trial began, [the Applicant's] counsel repeated that "the language of the statute is so – it would require an affirmative answer to all of the issues," adding that this effect "is a denial of due process in the 8th amendment, with regard to the death penalty in a capital murder case."

We will not overturn our previous finding. The objections cited by the applicant mention neither *Penry I* nor anything about the adequacy of the vehicle by which the jury could consider and give effect to mitigating evidence. Rather, the cited objections challenge the adequacy of the special issues to satisfy the principle that the jury's discretion must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."[56] *Laroyce Smith II* does not help the applicant because the defendant in that case did object to the failure of the special issues to allow consideration of mitigating evidence.[57]

Having failed to make a sufficient objection, the applicant must demonstrate egregious harm. Considering the evidence introduced and the applicant's defensive theories at the punishment phase of his trial, we find that the error did egregiously harm the applicant. The applicant put significant emphasis on mitigation during the punishment phase. His evidence of drug addiction, poverty, and a crime-ridden neighborhood was at the heart of his mitigation theory. While we cannot say what credibility or weight the jurors might have given it, since it went to the heart of the applicant's defensive theory, such mitigating evidence was nonetheless relevant and outside the scope of the special issues. Therefore, the trial court was required to provide a constitutionally adequate vehicle for the jury to fully consider and give effect to it. The

---

[56] *Gregg*, 428 U.S., at 169.

[57] 550 U.S., at 313-14.

trial court's failure to do so "[went] to the very basis of the case" and "vitally affected [the applicant's] defensive theory"[58] at the punishment phase, because the jury had no adequate means to act upon the applicant's mitigation theory, such as it was.[59]

Because there was constitutional error in the punishment phase of the applicant's trial by which he was egregiously harmed, we remand this case to the trial court for new punishment proceedings.

Womack, J.

Delivered April 28, 2010.
Publish.

---

[58] *See Ex parte Laroyce Smith*, 185 S.W.3d, at 464 n.23.

[59] Having found that the Applicant was egregiously harmed, we decline the Applicant's invitation to revisit the propriety of harm analysis in the context of *Penry* error.