

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,907

### EX PARTE ROBERT JAMES CAMPBELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 586190-C IN THE
### 232ND DISTRICT COURT HARRIS COUNTY

**ALCALA, J., filed a concurring opinion in which JOHNSON, J., joined.**

**CONCURRING OPINION**

I join the Court's decision to deny applicant's claim. I write separately to explain why

I conclude that the mitigation evidence presented during the punishment phase did not

warrant a separate instruction. *Compare Ex parte Williams,* No. AP-76,455, 2012 WL

2130951, at *23 (Tex. Crim. App. June 13, 2012) (not designated for publication) (Alcala,

J., dissenting) (mitigation instruction warranted because jury was unable to give "reasoned

moral response to evidence of applicant's remorse").

At best, applicant has presented evidence that bears only a tenuous connection to his

moral culpability, and, therefore, a separate mitigation instruction is not constitutionally required. *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 254 n.14 (2007) ("Special instruction is not required when mitigating evidence has only a tenuous connection—*some arguable relevance*—to the defendant's moral culpability.") (internal citations omitted); *Ex parte Smith*, 309 S.W.3d 53, 56 (Tex. Crim. App. 2010) (same).[1]

Evidence presented during the punishment phase suggested that applicant's family life may have been troubled by periods of poverty, family violence, problems in school, alleged physical mistreatment by his mother, and falling in with the "wrong crowd." Evidence of childhood abuse or neglect has often been cited as a relevant mitigating circumstance that warrants a separate mitigation instruction. *See Abdul-Kabir*, 550 U.S. at 259 ("Evidence of childhood deprivation and lack of self-control did not rebut either deliberateness or future dangerousness but was intended to provide the jury with an entirely different reason for not imposing a death sentence"); *Ex parte Moreno*, 245 S.W.3d 419, 426 (Tex. Crim. App.

---

[1]     I agree with this Court's determination that evidence of applicant's age, eighteen years old at the time of the offense, did not require a separate mitigation instruction. Mitigating evidence of youth is adequately considered within the scope of Texas's special issues and does not require a separate mitigation instruction. *Johnson v. Texas*, 509 U.S. 350, 368 (1993); *accord Abdul-Kabir v. Quarterman*, 550 U.S. 233, 261 (2007) (describing youth as a "universally applicable mitigating circumstance that every juror has experienced," and thus no special instruction is required). Furthermore, I agree with this Court that the positive character evidence actually introduced by applicant in this case is not of the sort that requires a separate mitigation instruction. Witnesses testified that applicant had some positive community ties, such as singing in a church choir, babysitting for friends, and doing yard work around his neighborhood. But the record contains few details suggesting that applicant regularly engaged in acts of kindness or devotion beyond those found generally in society. *See Abdul-Kabir*, 550 U.S. at 261; *Brewer v. Quarterman,* 550 U.S. 286, 294 (2007) (noting that "the transient quality of [] mitigating evidence may make it more likely to fall in part within the ambit of the special issues"); *Graham v. Collins,* 506 U.S. 461, 467 (1993) (in general, positive character traits adequately considered within scope of Texas's special issues).

2008) ("We can no longer maintain that evidence of a troubled childhood is adequately encompassed within the statutory special issues."). In this case, however, the few details that were introduced failed to demonstrate particularized circumstances of a troubled upbringing beyond those familiar to large segments of our society. *See*, *e.g.*, *Abdul-Kabir*, 550 U.S. at 261 (distinguishing universally mitigating circumstances, which do not necessarily require a separate mitigation instruction, from "particularized" experiences of childhood abuse and neglect, which do); *Jurek v. Texas*, 428 U.S. 262, 272 (1976) (constitutionality of Texas's special issues "turns on whether the enumerated questions allow consideration of particularized mitigating factors").

For example, the record includes evidence about applicant's financial difficulties. Applicant was one of six children born to a mother with a sixth-grade education. Applicant's mother testified that, at one point when applicant was a child, the family moved three times in five months because she "just couldn't afford the rent." This record demonstrates poverty that is, unfortunately, similar to that experienced by many in our society, but it does not show how the financial difficulties negatively impacted applicant's personal development or character. The persuasive value of this evidence, therefore, is wanting in this case.

Furthermore, although the applicant provided some evidence of family violence, this evidence lacks the level of detail that might be persuasive to a jury as mitigation evidence. Applicant's mother testified that, during fights with applicant's father, his father would "hit her" in applicant's presence, but no evidence described the frequency or severity of these

episodes. And although applicant has characterized the record as showing "physical mistreatment" by his parents, the record instead shows that applicant's mother would often discipline him by "get[ing] a belt and whip[ping] him." When pressed for details on this subject, Mrs. Campbell's responses were inconsistent. In response to a question asking how often the whippings occurred, applicant's mother initially answered, "Yes," then re-answered, "Hundred." Defense counsel then asked whether Mrs. Campbell had to do that "a lot," to which she answered, "No . . . not a lot." The record was silent with respect to the number of times that physical discipline occurred, the applicant's age at the time, the location on applicant's body where he was struck with the belt, and the number of times he was struck. No evidence suggested that he was bruised or injured, nor that he was emotionally affected by the use of the belt. The lack of clarity about the extent to which applicant's mother's disciplinary tactics may have exceeded society's expectations about the proper limits of discipline, and any resulting impact on the applicant, makes the mitigating value of this evidence deficient.

The more difficult question in this case concerns the evidence that applicant describes as his expressions of remorse. In a phone conversation, applicant told his sister-in-law that he was sorry for putting the "lady's family" "through what he did." But, like the other evidence, no details were introduced to describe his tenor or demeanor when he made the statement. This distinguishes the instant case from *Williams* because, in that case, the record showed that Williams was "crying uncontrollably," "apologizing," and "really upset" when

he saw a televised news report confirming that the person he had shot was a police officer. *Williams,* 2012 WL 2130951, at *20 (Alcala, J., dissenting). In the absence of any details to illustrate the context within which applicant stated that he was sorry for putting the "lady's family" "through what he did," I cannot conclude that this bare statement constitutes mitigation evidence that might sway a jury to consider sentencing applicant to life rather than death.

Although applicant has presented multiple categories of evidence that, perhaps, could have been considered mitigating had the record been further developed, I cannot conclude that, in the absence of such further development, the trial court erred by denying a mitigation special issue.

With these comments, I concur in the Court's decision to deny applicant post-conviction relief on his claim of jury-charge error.

Alcala, J.

Filed: November 7, 2012

Do Not Publish