

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,907

### EX PARTE ROBERT JAMES CAMPBELL

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS
## FROM CAUSE NO. 586190-D IN THE 232ND JUDICIAL DISTRICT COURT
## HARRIS COUNTY

*Per Curiam*. ALCALA, J., filed a concurring opinion in which JOHNSON, J., joined.

### O P I N I O N

This is a subsequent application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071 § 5.

In May 1992, a jury found applicant guilty of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set applicant's punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Campbell v. State*, 910 S.W.2d 475 (Tex. Crim. App. 1995). Applicant filed his initial post-conviction application

for a writ of habeas corpus in the convicting court on April 23, 1997. This Court denied applicant relief. *Ex parte Campbell*, No. WR-44,551-01 (Tex Crim. App. Mar. 8, 2000)(not designated for publication). Application filed his first subsequent application in the trial court on May 28, 2003, in which he asserted that his execution would violate the Eighth Amendment because he was mentally retarded and that the jury should have determined the issue of mental retardation. This Court dismissed applicant's first subsequent application. *Ex parte Campbell*, No. WR-44,551-02 (Tex. Crim. App. July 2, 2003)(not designated for publication). In his second subsequent habeas application, which was filed in the trial court on August 14, 2006, applicant raised *Brady* and actual innocence claims. This Court dismissed that application on April 25, 2007. *Ex parte Campbell*, 226 S.W.3d 418 (Tex. Crim. App. 2007). The instant application was filed in the trial court on September 5, 2012.

Applicant presents a single allegation in the instant application in which he asserts that he is "entitled to relief from his death sentence because he presented significant mitigating evidence related to his moral culpability and the appropriateness of a death sentence that could not have been given full effect by the sentencing jury." Because the law has further developed since applicant filed his last habeas application, we have filed and set this claim.

In *Ex parte Smith*, this Court explained:

> The United States Supreme Court has established two key principles that guide the process by which a jury may assess the death penalty. First, while the death penalty is not per se cruel and unusual punishment in violation of the Eighth Amendment, a jury's discretion to assess the death penalty "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Second, the jury must be provided a vehicle by which

to fully consider and give effect to mitigating evidence of "the character and record of the individual offender and the circumstances of the offense."

With respect to the second principle, the Supreme Court has held that the mitigating evidence must first be relevant. Relevant evidence in this context is "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." A vehicle need not be provided when the evidence has "only a tenuous connection–'some arguable relevance'–to the defendant's culpability," but only when the evidence "may have meaningful relevance to the defendant's moral culpability 'beyond the scope of the special issues.'" [*Abdul-Kabir v. Quarterman*, 550 U.S. 233, 253 n. 14 (2007).] Once this "low threshold for relevance" is met, the jury must be provided an adequate vehicle by which to fully consider and give effect to the evidence.

At the time [Smith] was sentenced, the jury was required to answer special issues of deliberateness, future dangerousness, and, if raised by the evidence, provocation. The Supreme Court found that these special issues adequately directed and limited the jury's discretion. But if a defendant presented relevant mitigating evidence that was outside the scope of the special issues, or that had an aggravating effect when considered within the scope of the special issues, the special issues were a constitutionally inadequate vehicle for the jury to fully consider and give effect to the mitigating evidence.

(Footnotes omitted.) *Smith*, 309 S.W.3d 53, 55-6 (Tex. Crim. App. 2010). As in the *Smith* case, applicant's jury was required to answer special issues of deliberateness, future dangerousness, and, if raised by the evidence, provocation. However, unlike the mitigation evidence presented in *Smith*, the evidence in the instant case is not two-edged.

In his writ application, applicant asserts that he is entitled to a new punishment trial because the jury did not have a vehicle by which it could give effect to his mitigating evidence. Specifically, applicant asserts that his jury could not give effect to his evidence of youth, "childhood poverty," "physical mistreatment," "family violence," "problems in

school," "emotional isolation and rejection," and "the destructive influence of falling in with 'the wrong crowd.'"

The evidence presented at trial did show that applicant was 18 at the time he committed this crime. However, several cases have held that youth can be given effect when answering the future dangerousness issue. And the remainder of what counsel describes as "evidence" is not supported by the record. The testimony at trial showed that applicant's parents were together until about ten months before the trial on this offense, and his mother testified that they had a good relationship. His mother admitted that she and applicant's father did occasionally argue in applicant's presence, and she did admit that he hit her on at least one occasion, but this questioning was superficial and did not delve into anything deeper than these basic facts. Applicant's mother also admitted that applicant was disciplined with a belt on the apparently rare occasion that he would get in trouble, and she admitted that at one point they moved several times in a few months because she "couldn't afford the rent." But again, this questioning was superficial, and applicant did not delve into the reasoning behind the statements. Finally, testimony showed that applicant did yard work with friends, went to church, played baseball and basketball, and sang in a church choir. And, although applicant's troubles began the year before he was convicted of the instant offense, the members of the "wrong crowd" that supposedly influenced him had been his friends for years prior to the current trouble.

Despite applicant's attempt in his habeas pleadings to re-characterize the testimony,

the actual record evidence presented at trial was not outside the scope of the special issues given, nor did it have an aggravating effect when considered within the scope of the special issues. Thus, applicant was not constitutionally entitled to a separate jury instruction at the punishment phase of trial. *See, e.g., Penry v. Lynaugh*, 492 U.S. 302 (1989), and *Ex parte Jones*, No. AP-75,896 (Tex. Crim. App. June 10, 2009)(not designated for publication)(holding that youth and positive personal characteristics are the sorts of evidence that can be considered within the scope of the former special issues – no *Penry* issue required). Accordingly, the relief applicant seeks is denied.

Delivered: November 7, 2012
Do Not Publish