

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-81,585-01

### EX PARTE DARYL KEITH WHEATFALL, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. 608052-A IN THE 178TH JUDICIAL DISTRICT COURT HARRIS COUNTY

*Per curiam.*

### O P I N I O N

In October 1991, a jury convicted applicant of a capital murder committed in December 1990. The jury returned affirmative answers to the special issues submitted to it pursuant to Texas Code of Criminal Procedure article 37.071. The trial court accordingly set applicant's punishment at death. This Court affirmed the conviction and sentence. *Wheatfall v. State*, 882 S.W.2d 829 (Tex. Crim. App. 1994).

Applicant filed his initial application for a writ of habeas corpus with the convicting court on October 21, 1996, raising three claims for relief. In Claim 1, applicant alleges that trial counsel rendered ineffective assistance at the punishment phase because counsel did not investigate, develop, or present mitigating evidence of applicant's past psychological problems. In Claim 2, applicant contends that he is entitled to relief from his death sentence because the jury was unable to give full effect to the mitigating evidence he presented. In Claim 3, applicant argues that Section 19.03 of the Texas Penal Code is unconstitutional as applied to him because the death penalty is selectively prosecuted in Texas.

The trial court entered findings of fact and conclusions of law regarding all three of applicant's claims. It recommended that this Court deny relief on Claims 1 and 3. Regarding Claim 2, the trial court recommended that we review the mitigating evidence that applicant presented at trial to determine whether it fell within the scope of the special issues submitted to the jury.

We first consider applicant's allegation that the jury was unable to give full effect to the mitigating evidence he presented. When applicant was sentenced, the jury was required to answer special issues of deliberateness, future dangerousness, and if raised by the evidence, provocation. *See* TEX. CODE CRIM. PROC. art. 37.071 (1989). Applicant's jury received all three special issues. In *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*), the Supreme Court held that the former special issues were a constitutionally inadequate vehicle for the jury to fully consider and give effect to mitigating evidence that fell outside the scope

of the special issues or that had an aggravating effect when considered within the scope of the special issues. *See Ex parte (Roy Gene) Smith*, 309 S.W.3d 53, 56 (Tex. Crim. App. 2010).

Here, the jury was presented with mitigating evidence that, at an early age, applicant witnessed his father physically abusing applicant's mother. His mother's resulting injuries were sometimes serious enough that she sought medical care. Applicant's parents separated when he was six or seven years old and later divorced. After the separation, applicant and his four siblings lived with their mother, who struggled financially, moved the children around frequently to evade her former husband's attempts to find them, was often absent from home, and had trouble keeping food in the house. One place they lived was infested with rats. Applicant and his siblings were often hungry, and applicant began to get into legal trouble for shoplifting food. Because his mother moved frequently, applicant attended many different schools and missed many days of instruction. Applicant was disruptive in school and his disciplinary problems increased after his parents separated. As a result of juvenile criminal activity, applicant was twice removed from his mother's home and required to live at a state boys' school. Applicant, who was physically small, complained in letters that he was beaten at the boys' schools, and he had new scars when he returned home. Applicant's neighborhood became dangerous after people began using crack cocaine, and he felt that it was necessary to carry a knife for protection.

The jury was also presented with evidence that applicant was found to be hyperactive and placed in classes for emotionally disturbed students. When applicant was thirteen years old, a psychiatrist diagnosed him with a mental disorder. When he was seventeen or eighteen years old, he was hospitalized for a psychiatric problem and subsequently prescribed medication to treat his mental condition. The jury was additionally presented with evidence that applicant began using drugs when he was thirteen or fourteen and drinking alcohol when he was seventeen or eighteen and that he smoked marijuana throughout his school years.

Applicant's evidence of a troubled and impoverished childhood, a high-crime neighborhood, emotional and psychiatric problems, and drug and alcohol abuse is the kind of evidence that we have previously found to fall outside the scope of the former special issues. *See (Roy Gene) Smith*, 309 S.W.3d at 61–62 (poverty, crime-ridden neighborhood, drug abuse); *Ex parte Moreno*, 245 S.W.3d 419, 424–25 (Tex. Crim. App. 2008) (troubled or disruptive childhood); *Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007) (psychiatric problems, alcohol abuse, and a troubled childhood). Accordingly, the special issues submitted to the jury were an inadequate vehicle for the jury to fully consider and give effect to applicant's mitigating evidence.

In addition to the special issues, applicant's jury received the following supplemental instruction:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the Defendant. A mitigating circumstance may

> include, but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to one of the special issues, regardless of what the jury found the answer to the special issue to be.

The nullification instruction given to applicant's jury was very similar to the instruction at issue in *Penry v. Johnson*, 532 U.S. 782, 790 (2001) (*Penry II*) ("If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues."). In *Penry II*, the Supreme Court held that the nullification instruction given to Penry's jury at his punishment retrial did not cure the constitutional deficiency that the Supreme Court found in *Penry I* regarding the former special issues. *See* 532 U.S. at 803–04. Given the similarity in the two nullification instructions, we conclude that the nullification instruction given at applicant's trial did not cure the constitutional deficiency found regarding the former special issues. *See Penry II*, 532 U.S. at 803–04*; Ex parte Martinez*, 233 S.W.3d 319, 323–24 (Tex. Crim. App. 2007).

Having concluded that constitutional error occurred, we must consider whether harm resulted. *See Ex parte (Laroyce) Smith*, 185 S.W.3d 455, 463–64, 467 (Tex. Crim. App.

2006) (stating that the *Almanza*[1] standard applies to federal constitutional errors contained within the jury charge), *rev'd on other grounds by (Laroyce) Smith v. Texas*, 550 U.S. 297, 313–14 (2007); *see also (Roy Gene) Smith*, 309 S.W.3d at 62–63.  Because applicant made a timely objection at trial, we look only for "some harm."  *See (Laroyce) Smith*, 185 S.W.3d at 467.

In *(Roy Gene) Smith*, the Court found that the applicant satisfied the more difficult egregious harm standard when he presented mitigating evidence that fell outside the scope of the former special issues and then put significant emphasis on that mitigating evidence during the punishment phase.  *See* 309 S.W.3d at 63 ("[The applicant's] evidence of drug addiction, poverty, and a crime-ridden neighborhood was at the heart of his mitigation theory.").  The record supports the trial court's finding that, during the punishment phase, defense counsel similarly emphasized applicant's mitigating evidence that fell outside the scope of the former special issues.  Applicant's case is sufficiently similar to the facts of *(Roy Gene) Smith* that we would be warranted in reaching the same conclusion regarding egregious harm.  Applicant has therefore necessarily also satisfied the less stringent "some harm" standard.

Because constitutional error occurred at the punishment phase of applicant's trial, and he suffered some harm, we reverse his sentence of death and remand the case to the trial court for a new punishment hearing.  Because we grant relief on Claim 2, Claim 1

---

[1] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984 (op. on reh'g).

(applicant's ineffective-assistance allegation) is rendered moot, and we dismiss it. As to

Claim 3, in which applicant alleges that Section 19.03 is selectively prosecuted in Texas, the

record supports the trial court's findings and conclusions. We adopt the trial court's findings

regarding the selective prosecution issue and deny relief on Claim 3.

Delivered:     February 4, 2015
Do Not Publish